THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* HULAN E. JACK, Respondent.

First Department, April 21, 1960.

*Richard G. Denzer* of counsel (*Frank S. Hogan, District Attorney*), for appellant.

*Carson De Witt Baker* (*John R. Sanders* and *Mary J. Lowe* with him on the brief), for respondent.

BASTOW, J.   The People appeal from an order sustaining a demurrer and dismissing the indictment returned against respondent on January 12, 1960.   The indictment contained four separate counts, each charging a separate crime and joined in the indictment under the claimed authority of section 279 of the Code of Criminal Procedure.

An intelligent consideration of the problem presented requires a closer examination of the indictment.   Therein, the defendant is charged with one count of conspiracy (Penal Law, § 580, subd. 6) and three crimes of acceptance of illegal gratuities by

a public official, two of such crimes alleged to be in violation of section 886 of the New York City Charter and the third in violation of section 901 of the charter.

Section 580 of the Penal Law, so far as here material, makes each guilty of a misdemeanor if " two or more persons conspire:
* * * 6. To commit any act * * * for the perversion or obstruction of justice, or of the due administration of the laws ". Section 886 of the New York City Charter as it existed in 1958, the year of the alleged commission of the specified crimes, so far as here pertinent, provided as follows: " a. (1) No * * * officer * * * whose salary is payable in whole or in part from the city treasury shall * * * accept any gift, loan or thing or promise of value from any person, firm or corporation interested directly or indirectly in any manner whatsoever, in or in the performance of * * * any contract, work or business or the sale or acquisition of any property, the expense, price or consideration of which is payable from the city treasury * * *. (2) If any such person shall knowingly and intentionally violate any of the provisions of this subdivision, he shall, on conviction thereof, forfeit his office and be punished for a misdemeanor. * * * c. Any violation of any of the provisions of this section shall constitute cause for removal from office or employment." The material portion of section 901 of the charter reads as follows: " Any officer or employee of the city who shall knowingly * * * accept or receive any gratuity from any person whose interests may be affected by his official action, shall be guilty of a misdemeanor and if convicted shall forfeit his office or employment."

Turning to the indictment and considering first the last three counts thereof, we find that each alleges that defendant, as President of the Borough of Manhattan, from February 4, 1958 to May 13, 1958 received the sum of about $4,400 from one Ungar. The second and third counts charge a violation of section 886 of the charter in that defendant accepted the amount as " gifts, loans and things of value " from Ungar, a person interested in the performance of a contract the consideration of which is payable from the treasury of the City of New York. The distinguishing feature between counts two and three is that in the former the contract is alleged to be the leasing of office space, and in the latter the donor, Ungar, is alleged to have been interested in the acquisition and purchase of realty in connection with a slum clearance project. Count four, based upon the related charter provision (§ 901), alleges the same operative facts and charges that Ungar, the donor, was a person whose interests, as a proposed sponsor of a slum clearance project,

might be affected by defendant's official actions as a member of the Board of Estimate.

The first or conspiracy count of the indictment contains allegations relating to certain happenings that are claimed to have taken place in December, 1959, some 19 months or more after the date of the alleged crimes set forth in the last three counts. It is unnecessary to summarize the lengthy allegations therein. It is sufficient to state that if proved, it might be found that during the time the District Attorney was conducting an investigation of the subject matter, defendant, Ungar and others conspired to conceal the fact that Ungar had paid about $4,400 for the remodeling of defendant's apartment. It is charged that defendant conspired with the other persons, including Ungar, to commit acts for the perversion and obstruction of justice and the due administration of the laws, that is, sections 886 and 901 of the charter.

It is the contention of defendant that there is an improper joinder of the conspiracy count with the other three substantive counts because they are not connected together or do not constitute parts of a common scheme or plan within the purview of section 279 of the Code of Criminal Procedure. As we understand the decision sustaining the demurrer, it has been held that such joinder was improper as a matter of law. We are unable to agree with that conclusion.

Since 1936, section 279 has provided in part that when there are several charges " for two or more acts or transactions connected together or constituting parts of a common scheme or plan * * * instead of having several indictments or informations, the whole may be joined in one indictment or information in separate counts ". In *People ex rel. Pincus* v. *Adams* (274 N. Y. 447, 453) the court, in holding this enactment constitutional, said: " There is nothing unique about a statute which provides that a person may be tried in a single trial for a number of crimes of a similar nature or connected together as part of a common plan. Laws substantially the same as those involved herein have been for many years a part of the Federal statutes and are to be found on the statute books of many of the States. Such procedure was not unknown to the common law."

The unusual aspect of this case is that the alleged conspiracy to pervert and obstruct justice is claimed to have postdated the commission of the substantive crimes by many months. The indictment, however, may not be found to be defective because the chain of events did not follow the usual pattern. The problem is whether it may be found that the acts are connected

together within the meaning of the statutory provision. Clearly, they are. In the classic pattern, persons about to commit a crime frequently conspire to do so and before the event consider the method of operation best calculated to avoid detection. Thereafter, the crime is committed. Here, assuming the correctness of the allegations of the indictment, the crimes had been completed. The defendant's apartment had been remodeled and the contractor paid a substantial amount by Ungar. Months later, it is alleged, someone talked and the District Attorney commenced an investigation. Thereupon, defendant and others, again assuming the truth of the allegations, entered upon an elaborate conspiracy to conceal the true facts and thereby obstruct justice. Instead of the usual recognized situation where the substantive crime springs from the conspiracy, we here have the converse situation where the alleged conspiracy springs from the alleged substantive crimes. They are, however, connected together and in no sense of the words " unrelated crimes ".

It is suggested that to permit the joinder of these counts will in effect violate the recognized rule that a person charged with a particular crime may not be convicted upon proof that he committed another crime. But the court in *People ex rel. Pincus* v. *Adams* (274 N. Y. 447, 456, *supra*) stated: " Some of the dicta in that case [*People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559] does criticize the joinder of many offenses in a single trial, but what the judges who wrote the opinions in that case seemed to fear most was the introduction of evidence of unrelated crimes, which ordinarily would not be admissible. The statute under consideration herein provides for indictments only of crimes of similar nature or crimes connected together and forming part of a common scheme or plan."

The conclusion having been reached that the crimes charged in the indictment were " connected together " within the meaning of section 279, it follows that the court was without power to grant inferentially a severance and a separate trial of the conspiracy count. The granted power under that section is a discretionary one " in the interest of justice and for good cause shown " to sever a multiple-count indictment; but such discretion to act is withheld by the further provisions of the same section excepting from the grant of power to sever counts that are either connected together or parts of a common scheme or plan. Under this section, therefore, the court had no power to direct a severance.

Going further, the court below (21 Misc 2d 1, 2) concluded that the conspiracy count was " a separate unrelated crime

which should be tried separately and thus avoid the appearance created by the joinder of an implication of guilt on the part of the defendant " of the substantive crimes. This raises the question unnecessary to pass upon here as to whether in the event of such a severance, proof of the 1959 happenings set forth in the conspiracy count might not be admissible upon the trial of the severed substantive counts (cf. *People* v. *Molineux,* 168 N. Y. 264, 293). Such proof might come " into the case naturally and incidentally to the showing of the general facts and so [be] admissible even though it proved another and uncharged crime ". (*People* v. *Cohen,* 5 N Y 2d 282, 289.)

Therefore, if the decision of the lower court may be construed as a severance of count one from the other three counts of the indictment, there was an improvident exercise of discretion and, in any event, one without authority under section 279. In passing, it might be noted that this portion of the decision is not implemented in the order entered thereon and appealed from.

The demurrer to the indictment was sustained upon a further ground that we find to be untenable. It was stated in the court's decision that the indictment failed to charge defendant with knowing that Ungar had business dealings with the city. Apparently, this claimed defect related to the second and third counts of the indictment charging a violation of section 886 of the charter. Each of the counts alleges that defendant " knowingly and intentionally did accept gifts * * * from Sidney Ungar, a person interested " in city business. In substance, it is claimed that the respective counts are defective because it is not subsequently alleged that defendant had knowledge of such interests of Ungar. The indictment in its present form is sufficient (cf. *People* v. *Shapiro,* 6 A D 2d 271, 273; *United States* v. *Nathan,* 61 F. 936, 938).

Lastly, the demurrer was sustained upon the further ground that the amendment of section 886 of the charter (L. 1959, ch. 532) made some change " along procedural lines " and " that mere acceptance of a gift, loan or thing of value cannot justify conviction of an accused until it first be alleged in the indictment that he had knowledge that the donor had dealings with the city " (p. 3). It is assumed that the second and third counts of the indictment charge a violation of section 886 as it existed at the date of the alleged crimes. The 1959 re-enactment of the section made certain clarifications which it is unnecessary here to explore in detail. Suffice it to say that the amendments did not deal with matters of procedure. On the other hand, if the amendments are construed to be substantive in character, then a fortiori, they are not applicable to events occurring prior to

their effective date. (*People* v. *Oliver*, 1 N Y 2d 152, 157–158.) The conclusion reached by the court below was based on an erroneous construction of the 1959 amendment and its purposes.

The order appealed from should be reversed (1) on the law and (2) insofar as discretion was exercised in the decision or order with respect to a severance, as a matter of discretion, and the indictment reinstated.

BREITEL, J. P., M. M. FRANK, VALENTE and McNALLY, JJ., concur.

Order unanimously reversed (1) on the law, and (2) insofar as discretion was exercised in the decision or order with respect to a severance, as a matter of discretion, and the indictment reinstated.