M. Marvin Berger, J.
The issue before this court is as unusual as the identity of the defendant and the offenses with which he is charged.
The question is — when does a public servant’s employment end? Does it cease when he stops working or does it continue to the effective date of his resignation?
The defendant, J. Wayne Wrightstone, holds a Ph.D. degree from Columbia University. A specialist in educational research and statistics, he was former assistant director, director and assistant superintendent in charge of the Bureau of Educational Research of the New York City Board of Education. He also served as an assistant professor at the School of Education at Ohio University.
He is accused in four prosecutor’s informations, filed at the direction of a Kings County Grand Jury with violating section *825 524 of the New York City Charter, and section 1106-1.0 of the New York City Administrative Code.
Three informations charge violation of section 524 which forbids any school officer to be "directly or indirectly interested in the furnishing of any supplies or materials * * * in which the price or consideration is to be paid, in whole or in part, directly or indirectly, out of any school moneys”.
It is charged that defendant received commissions or compensation resulting from the furnishing to the board of education of a city-wide reading test on January 28, 1970, a citywide mathematics test on February 23, 1971 and a city-wide reading test on April 20, 1971.
The fourth count accuses defendant of violating section 1106-1.0 of the code, which forbids an officer, employee or person whose salary is wholly or partly paid from the city treasury, from becoming interested directly or indirectly in business dealings with the city. The 1970 city-wide reading test was the subject of a contract between the board of education and the well-known publishing firm, Harcourt, Brace and Jovanovich (hereafter referred to as Harcourt, Brace).
In 1955, defendant, along with four others, contracted with World Book Company, a predecessor of Harcourt, Brace, to prepare for publication "a certain work on the measure of achievement, which is provisionally entitled, Metropolitan Achievement Tests (1958 Edition) Forms D, E, F, G and H for grades 2 to 9, consisting of test booklets, answer sheets, keys for scoring, and directions for administering and interpreting.”
The publisher agreed to pay a royalty of 6% of the discounted receipts from sale of the work to all five authors. The defendant’s share of royalties was 1Vi% from both domestic and foreign sales.
Defendant moves to dismiss the informations on the ground that prosecution is untimely, since it was not commenced within five years of termination of defendant’s services with the board of education, by whom he was originally employed on February 1, 1940.
The CPL provides in part (CPL 30.10, subd 3, par [b]) that "A prosecution for any offense involving misconduct in public office by a public servant may be commenced at any time during the defendant’s service in such office or within five *826 years of the termination of such service”. However, the period of limitation may not extend the normal limitation of five years, in case of a felony or two years in case of a misdemeanor.
Defendant urges as further grounds for dismissal, that section 524 of the charter covers misconduct by a "school officer” and that the term "school officer” is defined by the New York Education Law (Education Law, § 2, subd 13) as a clerk, collector or treasurer of a school district, a member of a board of education, a school or district superintendent, a supervisor of attendance or other elected or appointed school district officer whose duties generally relate to the administration of affairs connected with the public school system.
As a specialist in the field of collecting educational statistics and the operation of educational testing programs, defendant claims he was not concerned with general administration of the New York City school system or the instructional activities of that system.
Finally, defendant asserts that section 524 of the charter excepts from its application "authors of school books used in any of the public schools because of any interest they may have as authors in such books.”
Although the Metropolitan Achievement Tests described in the 1955 publishing contract comprises test booklets and answer sheets as well as a manual for interpreting the achievement tests, defendant claims that the work is a book and is covered by the same contract terms as a book "within the accepted meaning of that term”.
Moreover, he argues, section 90 of the board of education by-laws, which permitted only authors of school books to receive royalties from books sold to the public schools, was rewritten on January 21, 1965 to cover "royalties resulting from authorship, design or development of manuals, teaching aids or other instructional material for the use of pupils or teachers.” Defendant submits that section 524 of the charter should be read in the light of this amended by-law and that failure to include in section 1106-1.0 of the Administrative Code an exemption, similar to that of section 524 relating to books, is a legislative oversight.
This court finds that the motion to dismiss must be granted because of the untimeliness of the institution of the criminal proceedings.
*827 The defendant applied for and was granted a retirement leave running from February 2, 1970 to June 30, 1970, totaling 98 school days.
On July 1, 1970, defendant received a retirement leave in lieu of sabbaticals for the period August 1, 1970 to July 31, 1971 totaling 12 months. A form, signed by Dr. Theodore H. Lang, deputy superintendent, states "Effective Date of Retirement 8/1/71.”
Under a collective bargaining agreement between the board of education and the council of supervisors and administrators, in effect as of the date of the defendant’s leaves in February and July 1970, defendant was to be compensated at the rate of 40% of his regular salary, and, on the effective date of his retirement by an additional sum, equal to 60% of his regular salary.
It is clear that if the defendant’s arguments directed to the Statute of Limitations are sustained, it is unnecessary to deal with the other grounds for dismissal of the informations.
However, the question as to the termination date is novel and does not permit a clearcut answer.
On the one hand defendant argues that (Penal Law, § 30.10, subd 3, par [b]) refers to "termination of service” rather than retirement date. (He appears to have ceased working in fact on February 2, 1970.)
Moreover, he maintains, that under applicable rules of the Internal Revenue Service and the Department of Health, Education and Welfare (none of them submitted to the court), his receipt of salary during terminal leave or leave in lieu of sabbaticals is regarded as a form of separation benefit which did not disentitle him from receipt of social security benefits.
The prosecution submits that although defendant was not physically working between August 1, 1970 and July 31, 1971, the defendant still had the title of assistant superintendent and drew a salary. Up until August 1, 1971, the effective date of his retirement, “he was merely enjoying the benefit of accumulated time off.” The Practice Commentary to CPL 30.10 (subd 3, par [b]) states (Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 30.10, p 68) that the section extended the normal two-year period of limitation to five years beyond the public servant’s "tenure in office.” Tenure continued to August 1, 1971.
Preliminarily as was said in respect to section 142 of the *828 Code of Criminal Procedure, from which CPL 30.10, derives, a statute limitating the time within which indictments must be found, is an act of grace on the part of the State which, when construction is required, is to be literally construed in favor of the defendant. (People v Guariglia, 187 Misc 843; People v Lord, 12 Hun 282, 287; People v Steiger, 154 Misc 538; People v Warden of County Jail at Salem, 242 App Div 282.)
The commission staff comment on CPL 30.10 (subd 3, par [b]) which required prosecution for misconduct in public office to be commenced, during defendant’s service in office or within five years after the termination of such service states, "Because of the inherent nature of the circumstance under which such offenses are committed, their commission is often not discovered until the incumbent public servant has left office years after the normal statute of limitation has run.” (2B CLS p 1-51.)
The practice commentary by Richard S. Denzer (Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 30.10, p 69) notes that "Out of these considerations, the new provision extends the regular period of limitation to a point five years beyond the public servant’s tenure of office, provided, however, that the total period may not exceed the regular limitation period for the crime involved by more than five years. In short, the regular limitation period for a felony of this nature may be stretched from five years, to at most, ten years, and for a misdemeanor of this nature from two years to, at most, seven years.”
The prosecutor’s informations were ordered to be filed by direction of the Grand Jury issued July 27, 1976. Actual filing appears to have taken place on July 30, 1976.
Assuming without admitting the validity of the People’s position that defendant’s employment terminated July 31, 1971, the People waited until the last possible moment for filing the informations.
But there appears to have been no concealment of the purchase of the test materials or of the defendant coauthor-ship of those materials.0
An "Application for Testing of Textbooks, Maps, Charts, Tests, Films and other Published Instructions Material,” dated September 1, 1971, executed by an officer of Harcourt, Brace was submitted to the court. It asks for adoption of a board of education resolution approving the use of various achievement, mathematics and reading tests. Three pages of a four- *829 page annex list defendant and his four colleagues as the authors of the tests.
True, the application states that no officer, employee or other person paid in whole or in part from the city’s treasury is directly or indirectly interested in the application "except as permitted by the New York City Charter and by the ByLaws of the Board of Education.”
But section 90-a of the by-laws appears to have permitted the use of instructional material such as the tests which the defendant helped to prepáre despite the absence of similar language in the charter. Thus, there is no evidence that concealment, at which the five-year Statute of Limitations was aimed, was practiced here.
Addressing once more the question of the beginning of the five-year Statute of Limitations — it appears that the period during which retirement or termination pay is received does not necessarily mark the limits of the period of employment, for it is not precisely a salary payment.
Although the Education Law of the State is not determinative of the question, since the charter controls, it offers some enlightenment on this point.
Article 11 of the Education Law, dealing with the New York State Teachers’ Retirement System, contains a definition of service as "actual teaching or supervision by the teacher during regular school hours of the day”. (Education Law, § 501, subd 19.)
In Simonds v New York State Teachers’ Retirement System (42 AD2d 470) the Appellate Division, Third Department, sustained exclusion from computation of petitioner’s retirement allowance, of a 12% salary increase paid during the last year of the teacher’s service. The decision was based on the lower court’s finding (72 Misc 2d 17) that the 12% salary increase was a retirement award.
In the instant case, there is no evidence that, Dr. Wright-stone’s terminal and retirement leave pay reflected any increase in the salary paid to those actually performing services for the board.
A number of cases cited in a scholarly opinion by Mr. Justice Albert A. Oppido in Lecci v Nickerson (63 Misc 2d 756, 759) make it clear that "the State and its municipalities in granting pensions, vacations or military leave are not conferring gifts upon their employees, but that essentially the *830 promised awards are conditions of employment — a form of compensation withheld or deferred until the completion of continued and faithful service.”
Thus, the receipt of terminal and retirement pay by the defendant was not salary paid for services currently performed and thus is not controlling as to the date of termination of defendant’s employment.
In this connection, the opinion of Mr. Justice Stecher, in Lombardi v City of New York (78 Misc 2d 1057) is instructive. There the plaintiff, administratrix of the estate of her deceased husband, sought recovery of her husband’s earned, unused and unpaid terminal leave allowance, annual leave allowance, and overtime service.
In permitting recovery of annual leave and terminal leave allowance, the court said (p 1061): "Terminal leave is leave which the employee earned during more than 20 years of employment (cf. Weber v Levitt, 41 AD2d 452). In this respect, of course, it does not differ from accrued annual leave. It does differ, however, from accrued annual leave in another and important respect. It is the contemplation of the contracting parties, including the City of New York, that at the time an employee shall decide to retire, he shall be paid certain sums of money for which he shall render no further service. It is a fiction to keep him on the payroll as an employee, for he has no further duties; only benefits. He performs no service and is obligated to perform no service to receive these benefits. His benefits can only be paid in cash. They may be paid in installments or in a lump sum. The last day of Albert Lombardi’s labor was the day before his death. He had earned the cash terminal leave and there is no reason to deny it to his estate.”
Of course, unless termination of defendant’s services was mandatory, the defendant could notify the board that he withdrew his retirement notice.
But defendant could not be required to remain at his post and his position could presumably be filled during the period of his receipt of retirement and termination allowances.
In summary, defendant’s service with the city ended with the cessation of rendition of service on February 1, 1970 and the Statute of Limitations began to run from that day.
This interpretation is limited to the facts in the case at issue and is not necessarily applicable to other situations.
*831 For example, a city employee who no longer renders services because of illness, followed by resignation or discharge may be prosecuted for misconduct in office within a period beginning more than five years after the onset of his illness.
And even in the defendant’s case, the effective date of the defendant’s notice of resignation might control some other aspect of his employment relationship with the board of education.
But, within the narrow boundaries of interpretation of the criminal Statute of Limitations, this court deems the defendant’s employment to have ended on February 1, 1970 from which date the five-year statute began to run.
Accordingly, the motion to dismiss the informations is granted.