OPINION OF THE COURT
Leon B. Polsky, J.
The defendant is charged in a 13-count indictment with various offenses arising out of six allegedly extortionate incidents occurring over a two-month period at three different Chinese restaurants. The defendant moves to sever the counts related to each of the separate incidents. The People resist severance asserting that the counts relating to each of the incidents are properly joined with those relating to other incidents under the provisions of CPL 200.20 (subd 2, par [b]). The defense claims that the separate offenses are joinable only under paragraph (c) of subdivision 2, not paragraph (b) of subdivision 2. The significance of the specific statutory basis for joinder is that I have no authority to sever counts joinable under paragraph (b) of subdivision 2; however if the joinder is a joinder under paragraph (c) of subdivision 2 then I may, “in *630 the interest of justice and for good cause shown” grant an application for separate trials. (CPL 200.20, subd 3; see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 200.20; see, also, Code of Criminal Procedure, § 279 [repealed]; People v Luciano, 277 NY 348, 362, rearg den 278 NY 624, cert den 305 US 620; People v Jack, 10 AD2d 336, 340, affd no opn 8 NY2d 857.)
CPL 200.20 provides for the joinder of offenses in three different situations: Paragraph (a) of subdivision 2 where a single act or transaction gives rise to several offenses;[1] Paragraph (c) of subdivision 2 where offenses are based upon different acts or transactions but the offenses are defined by the same or similar statutes.[2] Where joinder is based on paragraph (c) of subdivision 2, not only does the court have the discretion to grant a severance but the nonexercise of that discretion is most closely reviewed in light of subsequently developed events at trial (People v Payne, 35 NY2d 22; People v Fisher, 249 NY 419). The reason for the close scrutiny in the case of a joinder under paragraph (c) of subdivision 2 is that the joinder is one only of convenience, usually to the State, and, notwithstanding instructions to the jury to compartmentalize the evidence relating to each of the separate criminal incidents being tried, there is a real danger that evidence relating to one crime will improperly affect consideration of the other or others.
CPL 200.20 (subd 2, par [b]) provides that two offenses are "joinable” when: "Even though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first”. This provision represents a marked departure from the joinder provision in the Code of Criminal Procedure which was replaced in 1971 by the present Criminal Procedure Law. (L 1970, ch 996, eff Sept. 1, 1971.)
Section 279 of the repealed Criminal Code provided for the joinder of all charges arising from the same act or transaction (comparable to present par [a] of subd 2) or crimes of the same or similar character (comparable to present par [c] of subd 2) *631 or charges arising from several acts or transactions "connected together or constituting parts of a common scheme or plan” (L 1881, ch 442, as amd by L 1936, ch 328, § 1).
The draftsmen of the Criminal Procedure Law had initially intended to merely carry forward into the CPL the provisions of section 279 of the Code of Criminal Procedure. Thus the 1967 draft of the proposed New York Criminal Procedure Law, in what was then designated section 100.20, provided for joinder "when the conduct constituting [several] offenses comprises: 2.(a) A single act or transaction * * * or (b) Two or more acts or transactions connected together; or (c) Two or more acts or transactions constituting parts of a common scheme or plan; or (d) Two or more acts or transactions constituting offenses of the same or a similar character”. The Staff Comment to this draft section indicates that the revisors proposed only to restate existing law and mark the outer limits of joinder and consolidation. (Proposed NY Criminal Procedure Law, 1967 Draft, pp 172-173.)
The second draft of the proposed Criminal Procedure Law, submitted to the Legislature in 1968 as a Study Bill (Sen Intro 5878), radically altered the conceptual basis for joinder by eliminating the "connected together; or * * * constituting * * * a common scheme or plan” language (1967 Draft, 100.20, subd 2, pars [b], [c]) and substituted the following language as a new paragraph (b) of subdivision 2: "Though based upon different or partially different conduct, such offenses are so related that either proof of the first would be material and admissible as evidence in chief upon a trial for the second, or proof of the second would be material and admissible as evidence in chief upon a trial for the first”.
This language in paragraph (b) of subdivision 2 was again modified and appeared in its present form in Senate 1726/ 1970, Assembly 4561/1970 and ultimately was enacted as part of the Criminal Procedure Law.
All this adds up to a full blown adoption of what has come to be known as the "Molineux rule” as one of the criteria for joinder of offenses. In People v Molineux (168 NY 264) the Court of Appeals outlined the principal exceptions to the common-law rule precluding proof of other criminal acts as evidence of guilt of the offense on trial. The Molineux court was not concerned with joinder of offenses; rather it was dealing with the review of a conviction after trial where evidence of an uncharged crime was offered as evidence in *632 chief to prove the commission of the charged offense.[3] The difficulty in applying an admissibility of evidence test in evaluating the joinability of offenses is that it involves an evidentiary ruling at a time when trial strategies by both defense and prosecution have not been clearly formulated or articulated. What in the early stages of calendar practice may appear to be a trial issue within the Molineux exceptions may disappear in the fluid situation of trial. The motion to sever is one which of necessity must be determined in advance of trial in order that counsel for both sides may prepare their respective cases, and notwithstanding my uneasiness in making a preliminary evidentiary ruling on a case where I will not be the Trial Judge, the motion must be decided at this time on the record of the pleadings and Grand Jury minutes.[4]
For purposes of analysis the offenses conveniently may be considered in three groups, each group containing all of the charges relating to one of the restaurants.
GROUP A
On December 14, the defendant sought and obtained money from Mr. Sye, one of the owners of a Chinese restaurant on the west side. He returned on December 16 and spoke with Mr. Chow, a partner of Sye, and said he had not received enough money on the 14th and wanted another $200. Chow said he did not have any money and the defendant left. On December 20, the defendant again came to the restaurant and demanded money of Chow. He was then arrested by police who had been summoned by Mr. Chow.
These events have given rise to nine counts charged as follows: (Dec. 14) robbery, third degree, grand larceny, first and third degrees (by extortion); (Dec. 16) attempted robbery, third degree, attempted grand larceny, first and third degrees *633 (by extortion); (Dec. 20) attempted robbery, third degree, attempted grand larceny, first and third degrees (by extortion).
GROUP B
On January 24, the defendant appeared at the Chinatown restaurant of Mr. Chaing and allegedly demanded and received money. This incident gives rise to count 10, charging grand larceny in the third degree (by extortion) and count 11, charging robbery in the third degree.
group c[5]
On February 7, the defendant appeared at Mr. Pan’s restaurant on the lower east side, and demanded and received money. He returned again on February 12 to ask for more money and was then arrested. These two incidents are reflected in count 12, charging grand larceny in the third degree (by extortion) on February 7, and in count 13 charging attempted grand larceny in the third degree (by extortion) on February 12.
The People allege and the Grand Jury minutes show that the defendant came to each of the three Chinese restaurants and in Mandarin demanded money for his "brothers” who had sent him or were waiting outside. At one time, in each of the three restaurants, the defendant indicated that he belonged to a Chinatown gang called the "Eagles.”
The People seek to bring this case within three different exceptions or principles stated in Molineux as justifying receipt of evidence of other crimes: common scheme or plan, identity, and intent.
COMMON SCHEME OR PLAN
Since "common scheme” was a basis for joinder under former section 279 of the Code of Criminal Procedure, there is more decisional law available explicating upon this principle than the other Molineux exceptions (see, e.g., People v Luciano, 277 NY 348, supra; People v Jack, 10 AD2d 336, supra). In addition to those cases, dealing with the question in terms of joinability, there are also cases dealing strictly with the *634 admissibility of the evidence of an uncharged crime used to establish some element or aspect of the crime on trial. (See, e.g., People v Fiore, 34 NY2d 81; People v Grutz, 212 NY 72; People v Molineux, 168 NY 264, 305-313, supra). These cases teach that the mere repetition of criminal conduct is not what makes out a common scheme. There must be additional evidence which gives rise to a natural inference that the several criminal acts are the individual manifestation of an over-all plan or design (People v Fiore, supra, p 85).
In this case such an over-all plan is readily inferable from the conduct with respect to the three incidents within Group A and the two incidents within Group C. However, as among the three groups of offenses the inferences do not support a finding that they were all part of an over-all common scheme or design. At best, or worst, the defendant’s repetitive conduct at several restaurants demonstrates a lack of imagination.
IDENTITY
As indicated by the abbreviated recital of the evidence before the Grand Jury, it is difficult to conceive of a substantial issue of identity with respect to the offenses in Group A and Group C, the defendant having been arrested on the respective premises at the time of his last visits and demands for payment. It is of course possible that the defendant may deny he was the person who dealt with the respective proprietors on the earlier visits to the restaurants. However with respect to the Group B offenses, the defendant’s moving papers seeking a bill of particulars and discovery suggest the possibility of an alibi defense to this incident. Under these circumstances it is impossible to state that the defendant’s identity as the perpetrator of the Group B offenses, or indeed the earlier offenses in Group A or Group C has been conclusively established. (People v Condon, 26 NY2d 139; People v Allweiss, 61 AD2d 74; Rex v Harris, 36 Crim App R 39, 53 [1952], AC 694; Thompson v Director of Public Prosecutions, 13 Crim App R 61, 78 [1918], AC 221, 232.) This is not to say that the prosecution may conjure up a fanciful defense for the defendant and then put forward evidence of other crimes to rebut it. However where, at a particular stage of the proceeding, an issue may fairly be said to exist, the People are entitled to meet it with whatever evidence is admissible on the issue.
In each of the three restaurants the perpetrator spoke to *635 his victims in Mandarin; his demands for money were on behalf of his "brothers”; and he represented himself to be a member of the "Eagles.” These circumstances establish a modus operandi so individual that the defendant’s identity as the perpetrator of some of the offenses is probative as to his identity as the perpetrator of others.
INTENT
The rule allowing proof of other criminal acts to show intent is most frequently properly invoked in the class of cases involving crimes where intent is not readily inferable from the mere commission of the prohibited act (see People v McKinney, 24 NY2d 180; People v Molineux, 168 NY 264, 298, supra).
Insofar as it appears from the Grand Jury minutes, the allegedly extortionate demands were not couched in language so unequivocal that criminal intent would be necessarily inferable. Here the fact, if it be a fact, that the defendant sought and obtained money for his "brothers” from the SyeChow Restaurant (Group A) in December and that he was arrested and charged with extortion, is in my view admissible to prove his knowledge and intent when he subsequently approached the proprietors of the restaurants in Group B and Group C (see People v Schwartzman, 24 NY2d 241; People v Ryan, 232 NY 234; People v Duffy, 212 NY 57, 67; People v Katz, 209 NY 311, 328; Rex v Boyle, 10 Crim App R 180 [1914]).
Accordingly I find the offenses charged in the indictment are all properly joinable within GPL 200.20 (subd 2, par [b]) and that a motion to sever will not lie.
The motion is denied.

. For example, during the course of a robbery a defendant may commit the offenses of robbery, assault, larceny, possession of a weapon, etc.

. For example, two robberies committed at different times.

. Molineux is often misconstrued as a case expanding the admissibility of evidence of other crimes. Actually it simply restates the common-law rule precluding evidence of other crimes offered merely to show the defendant’s propensity to commit the crime on trial. The so-called exceptions to this rule, illustrated in the Molineux case and there construed most narrowly, are technically not "exceptions” but rather relate to situations where evidence of other criminal conduct is used for the legitimate purpose of establishing some aspect or element of the charged offense. (See People v Jackson, 39 NY2d 64; Rex v Harris, 36 Crim App R 39 [1952], AC 694; Makin v Attorney-General for New South Wales, 17 Cox Crim Cas 704 [1893], AC 57.)

. In deciding the evidentiary question for the purposes of this motion, I do not intend to bind the Trial Judge upon the question of admissibility of evidence. It is conceivable that issues raised or conceded at trial could affect the admissibility of evidence which would now appear to be admissible or excludable.

. It should he noted that the People claim that the three incidents, reflected in the nine counts in Group A, are joinable also under CPL 200.20 (subd 2, par [a]) because based upon the same criminal transaction. The same argument is also advanced with respect to the two incidents and two counts reflected in Group C. Since I find all of the offenses are joinable under paragraph (b) of subdivision 2 there is no need to consider whether some would have been joinable under paragraph (a) of subdivision 2.