OPINION OF THE COURT
Jerome D. Cohen, J.
Defendants are charged with grand larceny in the second *22 degree (Penal Law § 155.35) and conspiracy to prevent competitive bidding on public contracts (General Municipal Law § 103-e). They move this court to reinspect the Grand Jury minutes and upon reinspection to dismiss the indictment.
The motion to reinspect the Grand Jury minutes is granted.
This court has reexamined the Grand Jury minutes for legal sufficiency and for the purpose of considering whether the Grand Jury proceeding was defective in light of events subsequent to defendants’ indictment. The following is this court’s findings of fact and conclusions of law.
FINDINGS OF FACT
Defendant Edward Lefkowitz is president of codefendant Burleigh Industries, Inc., a distributor of hardware materials. It is alleged that the defendants, knowingly and with intent to defraud, entered into a bidrigging scheme with codefendant Stanley Jacobs, at that time a supervising buyer for the New York City Transit Authority, whereby Burleigh would be awarded a number of contracts to sell hardware items to the Transit Authority even though they were not the lowest qualified bidder for those contracts. Mr. Jacobs allegedly wrongfully recommended award of the contracts to Burleigh. Allegedly, as a result of Burleigh’s obtaining these contracts, the New York City Transit Authority paid an amount in excess of $1,500 over what they would have paid, had the true lowest qualified bidder received the award for the contracts.
A total of 11 contracts were awarded to Burleigh pursuant to the alleged agreement between Mr. Lefkowitz, acting for Burleigh, and Mr. Jacobs, the first of which was submitted on or about April 15, 1980 and the last of which was submitted on or about August 19, 1981. Certain of these contracts remained in effect until June 1983, when they were canceled by the Transit Authority.
The indictment was filed in March 1984. The defendants were arraigned on this matter on March 15, 1984. The defendants were charged with the crimes of conspiracy in the fifth degree, grand larceny in the second degree (11 counts), and conspiracies to prevent competitive bidding on public contracts.
The defendants Lefkowitz and Burleigh moved for dismissal of count 1 of the indictment (conspiracy in the fifth degree) upon the grounds that the prosecution of that count was *23 untimely and in violation of the Statute of Limitations (CPL 30.10 [2] [c]).
The District Attorney’s office consented to the dismissal of the conspiracy count and moved for such dismissal against all defendants on September 12, 1984. There was no objection and count 1 was thereby dismissed.
In October 1984, after reviewing the Grand Jury minutes, this court denied defendants’ motion to dismiss the indictment for insufficiency of the evidence.
Defendants now move this court for reinspection of the Grand Jury minutes and for dismissal of the remaining counts of the indictment on the ground that the proceedings before the Grand Jury were rendered defective by submission of a time-barred offense and evidence of same, which was legally insufficient. They further move for an order dismissing count 18, entitled conspiracies to prevent competitive bidding on public contracts, on the grounds that it is time barred and that the controlling statute is confusing to the grand jurors and, further, that it violates due process of law for failure to provide defendants with adequate notice of the charges against them.
i. count 1
Defendants contend that the evidence submitted to the Grand Jury included proof pertaining to a count that has been dismissed, and that such submission rendered the proceedings defective. During the Grand Jury proceedings, the People presented evidence of 33 separate "overt acts” that they claim were committed by defendants in furtherance of a conspiracy. Those "overt acts” related to a charge of conspiracy, which was originally contained in count 1 of the indictment, but has since been dismissed by this court as time barred. Defendants argue that submission of those "overt acts” irreparably impaired the proceedings.
This court finds no legal impropriety in submission to the Grand Jury of evidence pertaining to a charge that has been dismissed subsequent to the Grand Jury presentation, for the reasons set forth below.
A. Statute of Limitations Presents No Bar
It is axiomatic that evidence is admissible even if it underlies a crime that was left uncharged because of the Statute of Limitations. (United States v Cook, 17 Wall [84 US] 168 [1872]; *24 Federal Elections Commn. v Lance, 617 F2d 365, 371 [1980]; People v Kohut, 30 NY2d 183 [1972]; People v Schwenk, 92 Misc 2d 331 [1977].) The United States Supreme Court has resolved this question in favor of admissibility in United States v Cook (supra). Holding that the Statute of Limitations poses no bar to the submission of evidence underlying an uncharged crime that is probative of a charged crime, the court stated: "Accused persons may avail themselves of the statute of limitations * * * but courts of justice * * * will not quash an indictment because it appears upon its face that it was not found within the period prescribed in the limitation, as such a proceeding would deprive the prosecutor of the right to reply or give evidence, as the case may be, that the defendant fled from justice” (84 US, at p 179).
Likewise, the United States Court of Appeals, Second Circuit, held in United States v Doyle (348 F2d 715, 718 [1965], cert denied 382 US 843 [1965]): "[A]n indictment states an offense even though the crime alleged appears to be barred by limitation.” Again, in Federal Elections Commn. v Lance (supra, p 371) the court explicitly addressed this issue when it stated: "[W]e think that Lance [the defendant] has too facilely assumed that the existence of a statute of limitation defense means that no complaint may issue.”
Accordingly, Cook (supra) and its progeny clearly favor admissibility, and defendants may not use the Statute of Limitations to prevent the Grand Jury from considering evidence submitted under count 1.
B. Probative Value of Evidence Has Been Demonstrated
According to the law, evidence of a legally defective conspiracy count may be used to show that the defendants were "acting in concert”. In People v De Ruggiero (94 Misc 2d 20, 24 [1978]), the court, having been confronted with an issue directly on point with the case at bar, stated: "It is well settled that 'the submission of some inadmissible evidence during the course of this [Grand Jury] proceeding is held to be fatal only when the remaining legal evidence is insufficient to sustain the indictment’ (People v Avant, 33 NY2d 265, 271) * * * Thus, the instant dismissal of the conspiracy crime charged in count two of the indictment does not bar the People from going forward, on a theory of accessorial liability”. In addition, the court observed that evidence underlying an uncharged conspiracy count is competent "to show that [the] defendant acted in concert with the others”. (Supra, at p 25.)
*25 Therefore, evidence of an uncharged count is admissible where it is probative on the issue of accessorial liability. (See, People v Yuk Bui Yee, 94 Misc 2d 628 [1978]; People v Negron, 105 Misc 2d 492 [1980]; People v Colon, 109 Misc 2d 442 [1981]; Cotgreave v Public Admin., 111 Misc 2d 274 [1981].) Applying this reasoning to the facts before this court, it is clear that each of the 33 "overt acts”, if proved, would tend to establish that defendants "acted in concert” to commit the crimes remaining in the indictment, to wit: grand larceny, falsification of business records, and conspiracy to prevent competitive bidding.
C. Admission of Evidence is Compatible with Grand Jury Functions
This court is mindful of the wide latitude accorded Grand Juries in terms of what evidence they may consider. The statutory language of CPL 190.05 and case law interpreting that statute both support the People’s argument in favor of admissibility. The CPL states that the primary function of the Grand Jury is to "hear and examine evidence * * * concerning misconduct, nonfeasance and neglect in public office, whether criminal or otherwise”. (CPL 190.05.) Case law interpreting this provision of the CPL supports the wide latitude given to the Grand Jury.
As early as the turn of the century, the courts of this State have declared that a Grand Jury "may investigate * * * information of any kind derived from any source deemed reliable”. (People ex rel. Livingston v Wyatt, 186 NY 383, 391 [1906]; see also, People v Ackrish, 92 Misc 2d 431, 433 [1977]; People v Doe, 84 AD2d 182, 196 [1981]; Matter of Grand Jury Subpoenas, 58 AD2d 1, 5 [1977]; People v Lohman, 49 AD2d 75, 77 [1975]; People v Davis, 27 AD2d 299, 304, n 5 [1967]; People ex rel. Van Der Beek v McCloskey, 18 AD2d 205, 208 [1963].)
The defendants herein have offered no valid legal challenge to the reliability of the evidence submitted and, therefore, have failed to show this court any basis for disallowing its presentation to the Grand Jury. To the contrary, where the evidence in question underlies the charge of conspiracy, proof of the overt acts of the conspirators committed in furtherance of their purpose is competent as to the object crime regardless of whether the inchoate crime of conspiracy is ever charged. (People v Alvarez, 88 Misc 2d 709, 713 [1976].)
In sum, introduction of evidence underlying an uncharged *26 conspiracy count does not inhibit prosecution of the remaining substantive crimes where such evidence is probative of those substantive crimes. (See, People v McKane, 143 NY 455, 465 [1894].)
II. COUNT 18
The eighteenth count of the indictment charges the defendants with violating General Municipal Law § 103-e, entitled "Conspiracies to prevent competitive bidding on public contracts”. They seek dismissal of this count on the ground that it is time barred according to CPL 30.10 — which is applicable to misdemeanors generally and imposes a two-year limitation period — and further argue that the three-year period imposed by General Municipal Law § 103-e is not controlling in this case. In addition, they contend that the heading language of both Penal Law § 105.05 and General Municipal Law § 103-e, by using the word "conspiracy” in each, created such confusion to the grand jurors that they were unable to distinguish legally between counts 1 and 18. Finally, defendants argue, the alleged ambiguity created by the heading language of General Municipal Law § 103 prevented defendants from receiving proper notice of the charges against them, thereby violating their right to due process of law.
This court determines that the three-year limitation period imposed by General Municipal Law § 103-e is controlling, and that Penal Law § 105.05 and General Municipal Law § 103-e are clearly distinguishable and, as written, are not in violation of defendants’ right to due process of law.
A. The Three-Year Limitation Applies
This court is guided by the rule that where a conflict exists between two applicable Statutes of Limitation, one of which is general and the other specific, the more specific statute applies. Reference is made to the guidelines for judicial construction, which states: "General state-wide statutes of limitation are not intended to override specific pronouncements contained in statutes directed or applicable only to a particular class. Thus, such general statutes are never applicable where another statute, relating to particular types of claims, prescribes a different limitation or indicates that there is * * * no limitation.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 315; emphasis added.)
Defendants assert that the two-year limit applies, on the ground that Statutes of Limitation are, as a rule, liberally *27 construed in favor of the defendant. This rule is not relevant to the instant case. Instead, it applies to cases where a single Statute of Limitations is involved, and is invoked to resolve issues such as when the limitation period beings to run, when it is tolled, and when it ends. This case is clearly distinguishable, as it involves a conflict between two statutes. The application of the more specific time limit, which more effectively furthers the purpose and intent of the Legislature, is amply supported by the legislative history and the relevant case law.
LEGISLATIVE HISTORY
Originally, conspiracies to prevent competitive bidding were handled under a common-law theory. In 1960, however, section 581-a relating to this offense was added to the Penal Law. Even though CPL 30.10 generally sets forth a two-year Statute of Limitations for misdemeanors, section 581-a, which later became General Municipal Law § 103-e, was given a three-year Statute of Limitations. The New York City Bar Association recognized the discrepancy between these time limits and stated their criticism, prior to the passage of the bill, in a letter dated March 7, 1960. This letter brought the inconsistent time limits to the attention of the Legislature at the time the bill was passed, and yet the drafters of the bill allowed the three-year Statute of Limitations to stand.
At this time, the Legislature also added subdivision 7 to General Municipal Law, article 5-A, § 103, which was intended to advise prospective bidders that conspiracies to prevent competitive bidding were misdemeanors under the Penal Law. This amendment to the statute indicates that the Legislature wanted to create a specific statute to safeguard against collusion in bidding for public contracts. This statute, therefore, was intended by the Legislature to be considered separately from the general provisions of CPL 30.10.
In 1964, the Legislature made another addition to the General Municipal Law, which deals with public contracts. This amendment took the form of a "Declaration of policy” and states, in pertinent part: "It is hereby declared to be the policy of this state that this article shall be construed in the negotiation of contracts for public works and public purchases to which political subdivisions or [any] district therein is a party so as to assure the prudent and economical use of public moneys for the benefit of all the inhabitants of the state and to facilitate the acquisition of facilities and commodities of *28 maximum quality at the lowest possible cost.” (General Municipal Law § 100-a.)
The drafters of this bill intended this policy statement to clarify the fact that General Municipal Law article 5-A was to take precedence over any other statute in the area of interpretation of bidding laws.
In 1965, the Legislature repealed section 581-A from the Penal Law and added it, in its present form, to General Municipal Law § 103-e. By making this change, the intent of the Legislature to create a specific statute with specific restrictions was made even clearer.
CASE LAW
There is ample case law to support the general rule that in criminal matters Statutes of Limitation are to be liberally construed in favor of the defendant. (People v Guariglia, 187 Misc 843, affd 272 App Div 784 [1947]; People v Wrightstone, 88 Misc 2d 824 [1976].) However, this rule is applied to cases where there is a question of when a single Statute of Limitations begins to run and, hence, clearly is distinguishable from the instant case. Here, there are two applicable statutes, one general and the other specific. In analogous situations, the courts of New York have applied the more specific statute, stating: "Such general statutes are never applicable where another statute, relating to a particular type of claim, prescribes a different limitation”. (L.K. Land Corp. v Gordon, 1 NY2d 465, 470.) Section 103 is just such a specific statute. It pertains to a particular type of claim and it is aimed at a particular class of people.
Moreover, the New York courts have made it clear that the sole purpose of section 103 is to protect the taxpayer and not to enrich the bidder. In Matter of Sweet Assoc. v Gallman (36 AD2d 95, 99, affd 29 NY2d 902), the court said: "The policy underlying section 103 is to prevent corruption, collusion, fraud, favoritism and reckless expenditures * * * Section 103 must be construed with the general policy of this article in public contracts as enunciated in section 100-a of the General Municipal Law”. Again, the court in Jered Contr. Corp. v New York City Tr. Auth. (22 NY2d 187, 193) stated: "[T]he obvious purpose of such statutes is to guard against favoritism, improvidence, extravagance, fraud and corruption. They 'are enacted for the benefit of the property holders and taxpayers, and not for the benefit or enrichment of bidders, and should *29 be so construed and administered as to accomplish such purpose’ (See also, Matter of Allen v Eberling, 24 AD2d 594 [2d Dept]; Molloy v City of New Rochelle, 198 NY 402, affg 123 App Div 642 [2d Dept]; Matter of Carroll-Ratner Corp. v City Manager of New Rochelle, 54 Misc 2d 625.)
When implementing a Statute of Limitations, the New York judiciary has regularly and systematically honored the clear intent of the Legislature. In a case decided by the Court of Appeals, it was said by Judge Denio, "[t]he courts have uniformly applied to statutes of limitation a liberal construction, and in many instances have accommodated the strict language of the act so as to effectuate the general intention of the Legislature.” (Olcott v Tioga R. R. Co., 20 NY 210, 223.)
For the foregoing reasons this court will apply the more specific three-year Statute of Limitations set forth in General Municipal Law § 103-e.
B. Counts 1 and 18 Are Clearly Distinguishable
The defendants further contend that the language in count 1 was so similar to that in count 18 that the deliberations of the Grand Jury would be irrevocably tainted and consequently count 18 should be dismissed. Although it is true that the word "conspiracy” appears in both Penal Law § 105.05 and General Municipal Law § 103, there is no indication in the minutes of the proceedings that the grand jurors failed to understand that the two counts were distinct. On the contrary, the record shows that the Grand Jury was charged separately as to each crime and the instructions on the law were proper.
C. Due Process Rights Are Not Violated
This court finds that count 18 was sufficiently clear so as to give proper notice to the defendants of the charge against them and, therefore, the defendants’ right to due process was protected under US Constitution 5th and 14th Amendments and NY Constitution, article I, § 6. According to the law, a statute, by its language, satisfies due process if a reasonable man subject to the statute would be informed of the offense against him. (People v Byron, 17 NY2d 64 [1966].)
The title of the section in question is "Advertising for bids; letting of contracts, criminal conspiracies”. This language, on its face, clearly and unambiguously expresses the offense charged. Moreover, subdivision 7 makes clear that the statute is directed toward any "person or corporation who conspires to *30 prevent competitive bidding on a contract for public work”. Finally, section 103-e defines the elements of this crime in detail and carefully sets forth the penalties for this kind of criminal action.
If the test in determining whether a statute satisfies the constitutional requirements of due process is "whether a reasonable man subject to the statute would be informed of the nature of the offense” against him (People v Byron, 17 NY2d 64, 67, supra), this statute is "sufficiently definite, clear and positive to give unequivocal warning to citizens of the rule which is to be obeyed.” (Supra, at p 66.)
The burden of establishing that a statute is unconstitutional is on the defendant. (United States v Bland, 472 F2d 1329.) Since the defendants in this case have not met their burden, this court will not dismiss count 18 on the grounds that said count violated defendants’ right to due process of law.
Accordingly, the defendants’ motions are denied in all respects.