In the Matter of BOUNG JAE JANG et al., Respondents, v LEE BROWN et al., Appellants.

Second Department, September 17, 1990

**APPEARANCES OF COUNSEL**

*Victor A. Kovner, Corporation Counsel (Doron Gopstein,*

*Pamela Seider Dolgow, Grace Goodman, Bruce Rosenbaum* and *John Hogrogian* of counsel), for appellants.

*James G. Fennessey (Richard A. Izzo* of counsel), for respondents.

## OPINION OF THE COURT

KOOPER, J.

■ The issue before us is whether the Supreme Court, within the context of a civil action, may direct the New York City Police Department to undertake measures intended to protect the interests of a party to the action. We conclude that the Supreme Court is empowered to issue such a directive and further determine that the Police Department must enforce the lawful order of the court. Accordingly, the judgment appealed from is affirmed.

### I.

In January 1990 an altercation occurred in the Family Red Apple Co. grocery, owned by the petitioner Boung Jae Jang. A black woman claimed that she had been assaulted as she shopped. Shortly after the alleged altercation occurred, demonstrators from the surrounding neighborhood, the majority of whom were black, organized a vocal protest and boycott outside both the Family Red Apple Co. grocery and another Korean-owned fruit store, the Park Fruit and Vegetable Market. In the months that followed, the boycott often became volatile and racially charged in tone, resulting in several instances of violence, as the demonstrators, using bullhorns and positioning themselves in close proximity to the store entrances, exhorted, and in certain instances, verbally abused shoppers, in order to dissuade them from patronizing the petitioners' establishments. Since the inception of the boycott, detachments of New York City police officers have been stationed at the site, although, according to the petitioners, their presence has failed to satisfactorily mitigate the intensity and racially strident character of the protests or to prevent the protesters from effectively intimidating their clientele and damaging their businesses. Significantly, the identities of most of the demonstrators, who are purportedly affiliated with two loosely knit, ad hoc, community organizations, remain largely unknown.

## II.

In April 1990, the petitioners commenced an action in the Supreme Court, Kings County, to enjoin the demonstrators from continuing to congregate in the immediate vicinity of their businesses. By order dated May 10, 1990, the Supreme Court granted the petitioners' application for injunctive relief. In its decision, the court sought to balance "the constitutional rights of the [protesters] to congregate, rally and express their position and the constitutional rights of the [petitioners] to pursue their opportunity to engage in commerce and make a living for themselves and their families", and concluded that the demonstrators could permissibly continue their protest, but only from a distance of not less than 50 feet from the entrances of the two targeted grocery stores. The court's order also contained a provision directing the petitioners to serve a copy thereof upon the New York City Police Department and further directed the Police Department to enforce its provisions.

According to an affidavit submitted by Joseph P. Calzerano, the commanding officer of patrol of Borough Brooklyn South of the New York City Police Department, upon receipt of the court's order dated May 10, 1990, the Police Department "immediately took steps [to] compl[y] with it". Specifically, Commander Calzerano advised the demonstration leaders that a location had been prepared in which the protest could continue in conformity with the May 10 order. The demonstrators, however, refused to comply with Commander Calzerano's request. In response, the Police Department apparently discontinued its efforts to enforce the order, opting instead to negotiate with the demonstrators in an attempt to convince them to moderate their activities.

Although Commander Calzerano's affidavit represents that the demonstrators largely acceded to his requests, the affidavits submitted by the petitioners contend otherwise. According to the petitioners, the intrusive nature of the demonstrators' activities continued unabated subsequent to the efforts expended by the police in attempting to negotiate with the protesters. The petitioners' attorney, who offered to submit videotapes in order to substantiate his assertions, described in his affirmation a series of events which allegedly transpired during June 1990. These activities included, according to the petitioners: (1) the constant presence of large numbers of boisterous protesters intimidating customers, (2) police in riot

gear acting as a buffer between the protesters and the stores, (3) individuals utilizing bullhorns, uttering obscenities and racial epithets directed at customers and the Korean proprietors of the stores, and (4) attempts by various demonstrators to harass the petitioners' employees.

## III.

By order to show cause and petition dated June 4, 1990, the petitioners brought the present mandamus proceeding pursuant to CPLR article 78 to compel the Police Department to enforce the terms of the May 10, 1990, order. After oral argument, the Supreme Court granted the petitioners' application, and, by judgment dated June 26, 1990, directed the Police Department to implement its May 10 order.

On appeal, the appellants contend that the Supreme Court lacked jurisdiction to bind the Police Department, which was not a party to the underlying civil action between the petitioners and the demonstrators. They also claim that mandamus is unavailable because the Police Department has no ministerial duty to enforce court orders in civil actions between private parties in the absence of specific statutory authority, and because law enforcement is a matter exclusively committed to the discretion of the Police Department. The appellants further argue that: (1) an evidentiary hearing should have been conducted because disputed factual questions exist, (2) contempt proceedings should have been pursued before judgment in the mandamus proceeding was issued, (3) public safety and community relations concerns strongly militate against enforcing the May 10, 1990, order, and (4) tactical decisions regarding law enforcement are entrusted to the executive branch of city government, and are thus "nonjusticiable" in character. We find the appellants' contentions unpersuasive.

## IV.

As a threshold matter, we reject the appellants' assertion that, because the present controversy involves the exercise of authority generally reposed in the executive branch of city government, the matter must necessarily be regarded as "nonjusticiable," thereby foreclosing the courts from taking action. It has been stated that " '[j]usticiability', which ensures that the judiciary does not intrude upon or usurp the powers constitutionally allocated to the executive or the Legislature, holds that Judges should decide only 'judicially man-

ageable questions' " *(People v Ohrenstein,* 153 AD2d 342, 411, quoting from *Jones v Beame,* 45 NY2d 402, 408; *see, Jiggetts v Grinker,* 75 NY2d 411, 415; *McCain v Koch,* 70 NY2d 109, 119; *Matter of New York State Inspection, Sec. & Law Enforcement Employees v Cuomo,* 64 NY2d 233, 240). It has also been observed that "[m]erely because a case may have political overtones, involve public policy, or implicate some seemingly internal affairs of the executive or legislative branches does not, however, render the matter nonjusticiable" *(see, People v Ohrenstein, supra,* at 411). Indeed, to avoid resolving questions of law merely because a case touches upon a political issue or involves acts of the executive would ultimately "undermine the function of the judiciary as a coequal branch of government" *(Matter of Anderson v Krupsak,* 40 NY2d 397, 404). Here, unlike other cases in which broad policy concerns or political issues were at stake *(see, e.g., Jones v Beame, supra),* the controversy is both immediate and compelling, implicating the basic rights of a narrow class of affected individuals with respect to a specific factual incident. We find that, under these circumstances, the concept of justiciability does not constitute an obstacle to the court's exercise of jurisdiction.

## V.

■ The Supreme Court possesses, in the first instance, the basic authority to grant the injunction which it issued in the case at bar. Significantly, "[t]here is no question that in a proper case [the] Supreme Court has power as a court of equity to grant a temporary injunction which mandates specific conduct by municipal agencies" *(McCain v Koch, supra,* at 116). Here, the source of the Supreme Court's power to compel the police to act derives from its inherent authority to interpret the Constitution, which the Police Department is sworn to uphold, as well as from New York City Charter § 435 (a), which specifically states that it "shall be [the] duty" of the Police Department "to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, *disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public streets, sidewalks * * * and places; protect the rights of persons and property* [and] enforce and prevent the violation of all laws and ordinances in force in the city" (emphasis supplied). Indeed, the police play a " 'multifaceted' " role in our democratic society, being " 'charged with the protection of constitutional rights, the maintenance of order, the control of pedes-

trian and vehicular traffic, the mediation of domestic and other noncriminal conflicts and supplying emergency help and assistance' " *(Matter of Shannon B.,* 70 NY2d 458, 462; *People v De Bour,* 40 NY2d 210, 218; *see also, Concerned Jewish Youth v McGuire,* 621 F2d 471, 474-475, *cert denied* 450 US 913). The foregoing more than amply establishes that the functions of the police extend well beyond the mere enforcement of criminal laws and, accordingly, that the order dated May 10, 1990, merely requires the Police Department to undertake actions within the general scope of its officially prescribed duties.

## VI.

■ Nor can we agree that the discretion generally accorded law enforcement personnel in performing police functions constitutes an obstacle to the court's exercise of jurisdiction under the circumstances presented. Although, to be sure, the Police Department enjoys a broad measure of discretion in committing resources and devising tactical strategies, law enforcement personnel are not, on the other hand, at liberty to effectively "abdicate [their] responsibilities by either ignoring them or by merely failing to discharge them whatever [their] motive may be" *(see, Burton v Wilmington Parking Auth.,* 365 US 715, 725).* Here, the petitioners allege that for a period now exceeding eight months, they have endured protracted harassment, during which time law enforcement personnel have allegedly declined to satisfactorily revise or intensify their tactical response, despite the petitioners' assertions that their rights have not been adequately protected. Under the circumstances, the Supreme Court was not required to surrender its authority to act, merely because it is generally contended that the Police Department must be accorded discretion in exercising a law enforcement function. We note, moreover, that the Federal courts have not hesitated to direct law enforcement personnel to undertake specific measures in order to ensure that the rights of certain individuals are adequately protected *(see, e.g., New Alliance Party v Dinkins,* 743 F Supp 1055, 1067 [SD NY, Aug. 8, 1990] ["(t)he Second Circuit * * * has ruled that it is appropriate for Federal courts to set forth detailed procedures in balancing the interests involved"], citing *Olivieri v Ward,* 801 F2d 602, 605-606, *cert denied* 480 US 917; *see also, Cottonreader v Johnson,* 252 F Supp 492). Additionally, we have held that the Supreme Court possesses the inherent power to make its lawful orders effective *(see,*

*Gabrelian v Gabrelian,* 108 AD2d 445, 448-449; *cf., McCain v Koch,* 70 NY2d 109, *supra).*

## VII.

■ We further reject the appellants' contentions that the Police Department may decline to execute the court's lawful command premised upon its assertion that to enforce the May 10, 1990 order would engender community resentment towards the police or exacerbate the intensity of the protest. The foregoing argument fails to take into account that the court, after examining the relevant circumstances, concluded that the measures it prescribed were reasonable and necessary to ensure that the parties' respective constitutional rights are preserved. The appellants are not entitled to unilaterally conclude otherwise by, in essence, arrogating to themselves the ultimate authority to weigh the petitioners' entitlement to effective enforcement of the court's order. It is significant that Federal courts, in disposing of analogous contentions concerning the potential for "community hostility" *(see, Smith v Ross,* 482 F2d 33, 37), have declined to narrow the range of protections available to those seeking injunctive relief. Indeed, "as the [United States] Supreme Court has often emphasized in related contexts, state officials are not entitled to rely on community hostility as an excuse not to protect, by inaction or affirmative conduct, the exercise of fundamental rights" *(Smith v Ross, supra,* at 37; *see also, Cox v Louisiana,* 379 US 536, 551; *Houser v Hill,* 278 F Supp 920, 927; *Cottonreader v Johnson, supra,* at 497).

## VIII.

■ We are also unpersuaded by the appellants' assertion that the Supreme Court was without authority to bind the Police Department because the Department was not joined as a party to the petitioners' original application for injunctive relief.[1] According to the appellants, any attempt to mandate compliance with the court's order would violate the basic

1. The record reveals that an attorney employed by the Police Department was present in the courtroom as an observer at the time the petitioners' original application for injunctive relief was being considered by the court. Moreover, the petitioners' counsel has stated in his affirmation (1) that a licensed process server stationed at the demonstration informed ranking police officials at the scene that he intended to serve process on the protesters in connection with the petitioners' application for an injunction, (2) that a certified copy of the Supreme Court's temporary restraining order

principle which requires courts to acquire jurisdiction over parties before it purports to bind them. We disagree. Although we have no quarrel with the general proposition relied on by the appellants concerning the joinder of parties, we discern no joinder or jurisdictional impropriety which would foreclose enforcement of the May 10, 1990 order. Unlike an ordinary individual whose amenability to a judicial directive generally rests upon the court's jurisdiction over his person *(see, Markoff v South Nassau Community Hosp.,* 61 NY2d 283, 288; *Frankel v Schilling,* 149 AD2d 657, 658; *Donaldson v Melville,* 124 AD2d 361, 362)*, the Police Department is chargeable with an independently existing duty to enforce the law *(see,* NY City Charter § 435; *Matter of Shannon B.,* 70 NY2d 458, *supra; People v De Bour,* 40 NY2d 210, *supra).* We decline to hold that the Police Department's duty to enforce the law is contingent upon its being formally joined as a party to each and every proceeding in which it may ultimately be required to engage in some type of law enforcement activity. In any event, the petitioners cannot reasonably be expected to have foreseen that the demonstrators would decline to obey the May 10 order and, accordingly, to have joined the Police Department as a party to their suit in anticipation of such a situation.

## IX.

Nor do we find merit in the appellants' argument that mandamus is unavailable since the court's May 10, 1990 order did not create the requisite ministerial duty. It is well settled that mandamus does not lie against an officer, public body or corporation until the petitioner's primary right and the duty of the officer, public body, or corporation is fixed as a matter of law *(see, State Div. of Human Rights [Geraci] v New York State Dept. of Correctional Servs.,* 90 AD2d 51, 65; *see also, Spring Realty Co. v New York City Loft Bd.,* 69 NY2d 657; *Klostermann v Cuomo,* 61 NY2d 525). Mandamus will not be awarded to compel an act "in respect to which the officer may exercise judgment or discretion" *(People ex rel. Hammond v Leonard,* 74 NY 443, 445; *see also, Matter of Mullen v Axelrod,* 74 NY2d 580; *Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88, 97; *Matter of 2433 Knapp St. Rest. Bar v*

---

was served upon the appellants at One Police Plaza, New York, New York, and (3) that a copy of the court's May 10, 1990 order was also served upon the appellants.

*Department of Consumer Affairs,* 150 AD2d 464, 465; *Matter of Bonanno v Town Bd.,* 148 AD2d 532; Siegel, NY Prac § 558). The Court of Appeals has observed, however, that, "[w]hat has been somewhat lost from view is [the] function of mandamus to compel acts that officials are duty-bound to perform, regardless of whether they may exercise their discretion in doing so" *(see, Klostermann v Cuomo, supra,* at 540; *see also, Matter of Korn v Gulotta,* 72 NY2d 363, 370). As a legal remedy controlled by equitable principles *(see, Matter of Andresen v Rice,* 277 NY 271, 282; *Matter of Geller v Veteran,* 49 AD2d 574), mandamus is essentially a judicial command to perform a ministerial act specifically required of a public or corporate officer or body by law, which, as we have held, may embody a ruling of limited application laid down in the form of a judicial determination *(see, State Div. of Human Rights [Geraci] v New York State Dept. of Correctional Servs., supra,* at 65-66).

■ ■ As we have previously noted, the lawful mandate of the court directing that certain measures be undertaken by law enforcement personnel provides the requisite judicial determination from which the appellants' duty to act derives. Further, while the May 10 order directs the Police Department to prevent demonstrators from approaching within 50 feet of the grocery stores, it leaves the methods for accomplishing this objective to the discretion of the police *(see, Klostermann v Cuomo, supra,* at 539-540). In light of the foregoing, a proceeding in the nature of mandamus properly lies under the circumstances presented.[2]

## X.

■ The appellants' contentions that the court should have conducted an evidentiary hearing is unpreserved for appellate review, since, as the appellants' counsel conceded at oral argument—and as the record confirms—no request for such a hearing was ever made. Rather, the record buttresses the conclusion that the appellants' opposition to the petitioners' mandamus proceeding was based primarily upon purely legal

---

■ **2.** We are in accord with the Supreme Court's conclusion that the petitioners' use of civil contempt proceedings does not represent a viable alternative method of enforcing the May 10, 1990 order under the circumstances. Where, as here, the demonstrators' identities are largely unknown and their numbers sizeable, resort to piecemeal civil contempt proceedings against individual demonstrators cannot be considered a practical means of compelling compliance.

arguments, and not upon the claim that unresolved factual questions precluded the granting of relief without an evidentiary hearing.

For all of the foregoing reasons, the judgment appealed from is affirmed.

BROWN, J. P., HARWOOD and BALLETTA, JJ., concur.

Ordered that the judgment is affirmed, with costs.