OPINION OF THE COURT
Michael A. Gary, J.
The defendant was arrested while picketing on a public street outside of the Family Red Apple grocery store. The history of the boycott of the store and the reasons for the *607 injunctive relief granted the store owners by the New York Supreme Court is set forth in Matter of Boung Jae Jang v Brown (161 AD2d 49). In Jang (supra), the New York City Police Department was directed to enforce the Supreme Court’s order prohibiting all picketing within 50 feet from the Red Apple grocery store. In the case at bar, defendant is charged with criminal contempt in the second degree (Penal Law § 215.50 [3]) and disorderly conduct (Penal Law § 240.20 [6]). The defendant now moves, pursuant to CPL 170.30 (1) (a) and CPL 170.35 (1) (c), to dismiss only the charge of criminal contempt in the second degree on the ground that Penal Law § 215.50 (3) violates the First Amendment’s free speech guarantees and the Equal Protection Clause of the Fourteenth Amendment.
CPL 170.30 (1) (a) provides for the dismissal of a count of an accusatory instrument if "[i]t is defective, within the meaning of section 170.35”. CPL 170.35 (1) (c) provides that an accusatory instrument is defective when "[t]he statute defining the offense charged is unconstitutional or otherwise invalid.”
The accusatory instrument here alleges, in pertinent part, that the deponent police officer observed: "The defendant stand and protest with a number of other individuals less than fifty feet from the entrance of [the Red Apple grocery store], a public store, thereby violating a valid court order index #11133/90 signed by the Honorable Gerald S. Held on May 10, 1990, which restrains all individuals from congregating, protesting, demonstrating or otherwise gathering or distributing pamphlets at any point closer than 50 feet from the entrance of the above location.
"Deponent further states that the above mentioned Court order was served on the defendant and its substance read to defendant, and that defendant was then ordered to disperse and to move at least fifty feet away from the above premises upon which police order [sic] the defendant did remain within fifty feet of the entrance to the above premises and did continue to shout and chant.”
Defendant argues that his prosecution under Penal Law § 215.50 (3) violates the First and Fourteenth Amendments of the US Constitution and article I, § 11 of the NY Constitution.[1] Specifically, defendant claims that the Penal Law’s contempt statute, as applied to communicative activity, draws *608 an impermissible content-based distinction between the speech of persons involved in labor disputes and the speech of those who are not, in violation of the First Amendment. Additionally, under defendant’s reading of the contempt statute, he may be prosecuted whereas labor protesters, similarly in violation of a court order, are exempt from prosecution, in violation of the Fourteenth Amendment’s Equal Protection Clause.
In response, the District Attorney[2] argues that defendant’s claims should be rejected because New York statutory law, taken as a whole, neither draws an impermissible content-based distinction nor does it treat labor demonstrators differently from persons engaged in speech on other topics. Alternatively, if defendant is correct, the People urge that the appropriate remedy would be to include contemptuous labor activity within the ambit of Penal Law § 215.50 (3). (See, People v Liberta, 64 NY2d 152, 170-172 [1984].)
DISCUSSION
Penal Law § 215.50 (3) provides:
"A person is guilty of criminal contempt in the second degree when he engages in * * * the following conduct * * *
"Intentional disobedience or resistance to the lawful process or other mandate of a court except in cases involving or growing out of labor disputes as defined by subdivision two of section seven hundred fifty-three-a of the judiciary law” (emphasis added).
As the defendant argues, and the People concede, the statute exempts from prosecution some labor demonstrators whose conduct may be in violation of a court order. Superficially at least, the argument seems to have merit since peaceful picketing is constitutionally protected activity under the First Amendment. (Thornhill v Alabama, 310 US 88 [1940].) In fact, the Supreme Court has consistently voided ordinances that provide preferential status to labor picketing over other forms of peaceful picketing. This prohibition against subject-matter discrimination is well established in our jurisprudence. *609 (Carey v Brown, 447 US 455 [1980] [ordinance which barred residential picketing but not labor picketing found unconstitutional]; Police Dept. of Chicago v Mosley, 408 US 92 [1972] [ordinance which barred all forms of picketing within 150 feet of public schools except for labor picketing found unconstitutional].)
Defendant contends that even though Penal Law § 215.50 (3) does not directly seek to suppress certain speech as in Mosley and Carey (supra), it is still violative of the First Amendment because it serves as the basis for the prosecution of those who engage in nonlabor picketing but not for those engaged in labor picketing. Therefore, defendant argues, Penal Law § 215.50 (3) is constitutionally infirm since it provides preferential treatment to one form of expressive activity over another.
An analysis of defendant’s claim must begin with the May 10th order itself, since it was the disobedience of that order which is the basis of the contempt charge here.
In an attempt to balance the constitutional rights of the protesters to congregate, rally, and communicate their message with the store owners’ right to engage in commerce and earn a living, the Supreme Court ordered that all demonstrators could continue their protest but only from a distance of not less than 50 feet from the entrance of the two targeted grocery stores. (See, Matter of Boung Joe Jang v Brown, supra.)
The United States Supreme Court has unequivocally rejected the proposition that all picketing must always be allowed. In Mosley (supra, at 98), the court declared: "We have continually recognized that reasonable 'time, place and manner’ regulations of picketing may be necessary to further significant governmental interests.”
The People correctly point out that the May 10th order is content neutral and narrowly tailored to meet a significant government interest. Moreover, the order does not abridge the defendant’s First Amendment rights since it leaves open ample alternative avenues of communication permitting him to demonstrate everywhere except within a narrowly circumscribed area.
In Skinner v Oklahoma (316 US 535 [1942]), the United States Supreme Court found that a penal statute violates the Equal Protection Clause of the Fourteenth Amendment when it burdens a particular defendant but not others similarly *610 situated. (See also, People v Liberta, supra [marital exemption for rape and sodomy, and gender-based exemption of females from criminal liability for forcible rape of males are both violative of equal protection].) Thus, when a law discriminates among speech-related activities in a public forum, "the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interest, and the justifications offered for any distinctions it draws must be carefully scrutinized.” (Carey v Brown, supra, at 461-462.)
In the instant matter, defendant contends that Penal Law § 215.50 (3) runs afoul of the Equal Protection Clause in that there exists no substantial State interest to justify the preferential treatment for labor picketing. Contrary to the defendant’s claim, the People argue that because labor picketing is punishable under the Judiciary Law, the constitutional requirement that all persons similarly situated be treated alike is satisfied. In response to that argument, defendant contends, a contempt proceeding brought pursuant to the Judiciary Law will result in significantly disparate treatment for the contemnor than one brought pursuant to the Penal Law.
Resolution of these issues must begin with an examination of New York statutory law.
It is a fundamental canon of statutory construction that statutes on the same subject matter (in pari materia) are to be construed with reference to one another to ascertain their meaning and validity. (See, e.g., Strobl v New York Mercantile Exch., 768 F2d 22, 30 [2d Cir 1985]; Matter of Lower Manhattan Loft Tenants v New York City Loft Bd., 66 NY2d 298, 304 [1985]; see also, McKinney’s Cons Laws of NY, Book 1, Statutes § 221, at 376-377 [1971].) This canon is particularly appropriate in the context of a challenge to a statute’s constitutionality since there is a strong presumption that legislative enactments are constitutional (see, Cook v City of Binghamton, 48 NY2d 323, 330 [1979]; Matter of Schultz Mgt. v Board of Stds. & Appeals, 103 AD2d 687, 689 [1st Dept 1984]), and because statutes are to be construed in such a manner as to uphold their constitutionality, if possible. (Boos v Barry, 485 US 312 [1988]; Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 346 [1982]; Matter of Schultz Mgt. v Board of Stds. & Appeals, supra, at 689; see also, McKinney’s Cons Laws of NY, Book 1, Statutes § 150, at 314-323 [1971].) Therefore, although a statute, considered in isolation, may arguably be in violation of the Equal Protection Clause, it will nevertheless be upheld if, when read together with another statute, *611 it does not subject the challenger to a burden not shared by others similarly situated.
Labor activity, which is exempt from prosecution under the Penal Law, is punishable under Judiciary Law § 750 (A). Judiciary Law § 750 (A) provides, in pertinent part:
"A court of record has power to punish for a criminal contempt, a person guilty of any of the following acts, and no others * * *
"3. Wilful disobedience to its lawful mandate.
"4. Resistance wilfully offered to its lawful mandate.”
Significantly, the Judiciary Law statute contains no exemption for cases involving or growing out of a labor dispute. Thus, it is the existence of Judiciary Law § 750 which distinguishes this case from the United States Supreme Court cases on which the defendant relies. In none of those cases was there a complementary statute which, when read together with the challenged statute, resulted in equality of treatment. On the contrary, the common characteristic of cases in which the United States Supreme Court has invoked equal protection analysis to invalidate a regulation of First Amendment access to public places is that the law acts to exclude some identifiable group. (See, Widmar v Vincent, 454 US 263 [1981] [school cannot bar religious student groups’ use of its facilities while allowing nonreligious groups]; cf., Grayned v City of Rockford, 408 US 104 [1972] ["anti-noise” ordinance barred all noisemaking near school]; but see, Perry Educ. Assn. v Perry Local Educators’ Assn., 460 US 37 [1983].)
DISPARATE PUNISHMENT
Defendant’s final contention is that he is subject to a far greater punishment for contempt under the Penal Law than those persons involved in labor disputes are subject to under the Judiciary Law.
Section 751 (1) of the Judiciary Law provides that punishment for criminal contempt may be by fine not to exceed $1,000 and/or by imprisonment not to exceed 30 days. A conviction under Penal Law §215.50 (3) would subject the defendant to the same fine as under the Judiciary Law (see, Penal Law § 80.05 [1]) but, to a period of incarceration of up to one year (see, Penal Law § 70.15 [1]).
Another significant difference between the Penal Law and Judiciary Law contempt sections is that a finding of contempt *612 under the Judiciary Law, unlike the Penal Law, does not result in a criminal conviction. (See, City School Dist. v Schenectady Fedn. of Teachers, 49 AD2d 395 [1975]; Trice v Ciuros, 127 Misc 2d 289 [1985]; CPL 1.20 [13]; Correction Law § 500-a [3], [4].) By its unique nature, a contempt proceeding pursuant to section 750 of the Judiciary Law is to punish the contemnor for violating the court’s order, not to vindicate the criminal law. (People ex rel. Frank v McCann, 227 App Div 57 [1929], affd 253 NY 221.)
While this court concludes there is indeed disparate punishment for contempt by labor and nonlabor picketers under the respective statutes, this finding alone does not end the equal protection analysis. Rather, the focus must now be on whether the disparate treatment of picketers here satisfies the substantial State interest test. (Carey v Brown, supra.) Notably, neither counsel’s nor this court’s research disclosed any case law on the issue of disparate punishment in the context of picketing cases or First Amendment law.
It is well established that a State may afford different punishments, including the forebear anee of a criminal conviction, for individuals convicted of the same offense without violating the Equal Protection Clause as long as there is a rational basis for such considerations. (See, People v Drayton, 39 NY2d 580 [youthful offender treatment for 16 to 18-year-old defendants]; Drayton v People, 556 F2d 644 [2d Cir 1977] [youthful offender statute found constitutional].) Furthermore, in Mosley (supra, at 98), the United States Supreme Court observed that, "under an equal protection analysis, there may be sufficient regulatory interests justifying selective exclusions or distinctions among pickets.”
An examination of the legislative history of Penal Law § 215.50 sheds no light on the reasoning behind the enactment of the labor picketing exemption found in subdivision (3). However, as explained below, it is of critical significance that the exemption’s predecessor statute was added in 1935. Judiciary Law § 753-a (2) defines the circumstances in which conduct involves or grows out of a labor dispute. Labor Law §§ 807 and 808 authorize the issuance of injunctions in labor disputes and criminal contempt proceedings against violators of such orders. When sections 807 and 808 of the Labor Law and Judiciary Law § 753-a are read together, the Penal Law’s exemption’s purpose becomes clear. Both the Labor Law and the Judiciary Law statutes are identically worded successors of a statutory provision enacted in the 1930’s which consti *613 tuted this State’s Little Norris-LaGuardia Act (Civ Prac Act § 876-a), named for its Federal prototype, the Norris-LaGuardia Act (47 US Stat 70; 29 USC §§ 101-115). (See, Rankin v Shanker, 23 NY2d 111, 115 [1968].) Accordingly, the disparate punishment of labor and nonlabor picketers grows out of a statutory scheme to regulate labor in private industry.
The Legislature has found that the practice and procedure of collective bargaining as set forth and regulated in article 20 of the Labor Law is an exercise of the police power of the State for the protection of the public welfare — clearly a substantial State interest. (See, Labor Law § 700.) Moreover, it is rational for the Legislature to conclude that the sanctions of the Judiciary Law are sufficient to regulate labor picketers since labor picketers are generally organized, identifiable, and answerable to a union which is also subject to the court’s authority. The Legislature’s rationale for providing more serious penalties under the Penal Law’s contempt provision reflects the fact that nonlabor picketing is far more amorphous, less organized, and potentially more difficult to control, as borne out by the facts of this case.[3]
CONCLUSION
In sum, neither the Supreme Court’s order nor the criminal contempt statute that defendant is prosecuted under violates defendant’s First Amendment rights. Mr. McLeod was free to picket outside the Family Red Apple grocery store everywhere except for a narrowly defined area. Additionally, if a labor picketer were to violate the court order at issue, that person could also be punished for contempt. Thus, the defendant’s prosecution here does not violate the Equal Protection Clause or the Fourteenth Amendment. Therefore, for the reasons stated above, defendant’s motion to dismiss is denied.

. In neither of defendant’s memoranda of law does he do more than mention a State constitutional claim, therefore it is deemed abandoned.

. Pursuant to Executive Law §71 and CPLR 1012 (b) the Attorney-General was notified of defendant’s constitutional challenge to Penal Law § 215.50 (3) but declined to intervene. Failure to notify the Attorney-General of a challenge to the constitutionality of a New York statute results in a decision without precedential value and is limited to the case itself. (Matter of Tiffany B., 111 AD2d 168 [1985]; Roberts v Gross, 100 AD2d 540 [1984].)

. Here, significantly, even the identities of most of the demonstrators remain largely unknown despite their purported affiliation with ad hoc community organizations. (Matter of Boung Jae Jang v Brown, 161 AD2d 49.)