OPINION OF THE COURT
Martin I. Kaminsky, J.
Before the court is defendant’s motion to dismiss the information herein, on the grounds that the People have not brought the case to trial in the speedy fashion provided for in CPL 30.30 and that section 1420.04 of the General Ordinance of the Village of Muttontown is unconstitutional. The motion raises novel and complex issues, including: (1) whether such a village ordinance is subject to the Speedy Trial Act and (2) how to reconcile and apply prior decisions over the constitutionality of noise and related public nuisance ordinances. For the reasons stated below, the court denies the first branch of the motion, but grants the second branch.
The People have brought this action, on the complaint of Michael Tafreshi, a resident of the Village of Brookville, whose property is located adjacent to the Hav-A-Home Kennel, which is located in the Village of Muttontown. The kennel is owned by defendant Dennis Kleber. The People contend that the kennel is responsible for "loud and frequent barking noises” (referring to the dogs housed at the kennel), in violation of the ordinance, which prohibits "the keeping of any animals which by causing frequent or long continued noise shall disturb the comfort or repose of any person or persons in the vicinity”.[1]
As a threshold matter, the People ask the court to defer passing on the constitutionality of the ordinance, and to leave that matter for an appellate court to determine at the conclusion of this proceeding. The court declines to do so. Where, a *826 defendant believes he or she has a legitimate constitutional objection to a statute or ordinance, the defendant has the right to raise that objection at any time, particularly where, even if he is not being proceeded against criminally, the matter is being prosecuted in a criminal forum. (See, e.g., CPL 170.30 [1] [a]; 170.35 [1] [c]; accord, People v One Adams Blvd. Realty Corp., NYLJ, Oct. 19,1994, at 26, col 5 [Dist Ct, Suffolk County]; DeLeyer v Town of E. Hampton, NYLJ, Aug. 22, 1980 [Sup Ct, Suffolk County].) However, if possible, the court should avoid making determinations on constitutional grounds, where non-constitutional grounds will suffice to determine the issues. (Comiskey v Arlen, 43 NY2d 696, 698; People v Furlong, 129 Misc 2d 938.) Thus, the court should first determine whether CPL 30.30 applies to claims under the Muttontown Village General Ordinance, and (if so) whether the Speedy Trial Act has been violated here.
CPL 30.30, the Speedy Trial Act, provides a statutory mandate, as opposed to constitutional requirements,[2] for the prompt trial of criminal prosecutions and certain other proceedings, in order to assure that the People diligently bring such cases to a prompt conclusion, that defendants are not left to languish in jail or otherwise unreasonably subjected to the yoke of criminal charges, and that their ability to defend against such charges is not impaired by undue delay. (People v Sinistaj, 67 NY2d 236, 239; People v Worley, 66 NY2d 523, 527; People v Ganci, 27 NY2d 418, cert denied 402 US 924; People v Bratton, 103 AD2d 368, affd 65 NY2d 675.) The Speedy Trial Act is intended for the benefit of defendants, and should be liberally construed in their favor. (People v Wrightstone, 88 Misc 2d 824.)[3]
The relevant subdivision of CPL 30.30 at bar is subdivision (1) (d) which provides that a motion to dismiss under CPL *827 170.30 (1) (e) or 210.20 (g) "must be granted where the people are not ready within * * * thirty days of commencement of a criminal action wherein the defendant is accused of one or more offenses, at least one of which is a violation and none of which is a crime.” As is apparent from the statutory language, the first question to be addressed is whether a case charging a violation of section 1420.04 of the General Ordinance constitutes a criminal action; if so, GPL 30.30 (1) (d) plainly is not applicable.
Basic rules of statutory construction guide the court’s analysis. The court’s function is, of course, to fulfill the intent of the Legislature; and the starting point in attempting to do so is the language of the statute or ordinance itself (Landreth Timber Co. v Landreth, 471 US 681, 686; Matter of State of New York v Ford Motor Co., 74 NY2d 495, 500). Unambiguous words in a statute or ordinance should ordinarily be given their plain meaning (Blue Chip Stamps v Manor Drug Stores, 421 US 723, 756; Doctors Council Retirement v New York City Empls. Retirement Sys., 71 NY2d 669, 674-675). But that is only true in the absence of a statutory definition (Federal Deposit Ins. Co. v Meyer, 510 US 471; Smith v United States, 508 US 223) and such statutory definitions can be looked for and found in the other parts of the statute under the rubric that "a word is known by the company it keeps”, i.e., the doctrine of noscitur a sociis. (Gustafson v Alloyd Co., 513 US —, 115 S Ct 1061; Jarecki v G.D. Searle & Co., 367 US 303, 304; see also, Thoreson v Penthouse Intl., 80 NY2d 490, 496-497, rearg denied 81 NY2d 835.) Where the statute itself does not contain such definitions, resort may and should be had to other statutes that are part of the same statutory scheme. (Gustafson v Alloyd Co., 513 US, at---, 115 S Ct, at 1070-1071, supra; see also, Central Bank of Denver v First Interstate Bank, 511 US 164; Anglin v Anglin, 80 NY2d 553, 558; Matter of Lower Manhattan Loft Tenants v New York City Loft Bd., 66 NY2d 298, 304; Matter of Roballo v Smith, 99 AD2d 5, 7, affd 63 NY2d 485.) Finally, the court must avoid giving words meanings that render them redundant of other words in the same statute or ordinance (e.g., "offense” and "violation” here), and rather assume that the Legislature had something in mind when it chose to use such different words. (United States v Menasche, 348 US 528, 538-539; see also, Gustafson v Alloyd Co., 513 US, at —, 115 S Ct, at 1069.)
*828 One recent case, People v Vancol (166 Misc 2d 93), has reasoned, and another, People v Zulli (165 Misc 2d 190), has assumed, that municipal zoning ordinances are subject to CPL 30.30 (1) (d). Based on the facts that the defendant is arraigned and the People prosecute the action under the CPL, the court in Vancol concluded that, "a violation of a municipal ordinance is to be considered a criminal offense”, and then proceeded to apply CPL 30.30 (1) (d) to the case (166 Misc 2d, at 95, supra). Neither Vancol nor Zulli addressed the kind of ordinance here; and both are, thus, distinguishable. Moreover, the court believes that both cases proceed on an erroneous premise as to the scope of the statute. Vancol appears to misread the statute by applying it to a criminal ordinance; whereas, CPL 30.30 (1) (d) expressly provides that it applies only where the violation charged is not a criminal offense (i.e., "none of which is a crime”). Thus, if a violation of section 1420.04 is a crime, CPL 30.30 (1) (d) by its terms does not apply, and defendant’s motion to dismiss under it must be denied.
Not every matter that comes before this court is necessarily a criminal matter for the purposes of CPL 30.30, even though the procedures followed as to it may be essentially those of a criminal action. To determine whether the village ordinance here prescribes a "crime”, further analysis of the statutory definitions is necessary. The CPL does not contain definitions of the terms at issue here. However, the Penal Law, which is part of the same statutory scheme, does, and thus may and should be consulted here, under the rubric that statutes which are in pari materia should be read together. (Tenney v Liberty News Distribs., 13 AD2d 769; see also, People v McLeod, 150 Misc 2d 606, 610; People v Guthman, 75 Misc 2d 572, 575; People ex rel. Devore v Warden, 40 Misc 2d 943, 945 [so ruling with respect to other criminal and court statutes].) Indeed, case law in analogous situations holds that the definitions in Penal Law § 10.00 control for the purposes of inquiries under CPL 30.30. (People v Howell, 158 Misc 2d 653, 654, n; People v Zagorsky, 73 Misc 2d 420, 423.) Penal Law § 10.00 also suggests that is so, providing that, "[e]xcept where different meanings are expressly specified” in the statute, the definitions in that section shall apply. Since there are no other such express definitions here, the court will look to Penal Law § 10.00 (1), (3) and (6) for the applicable definitions of the terms as used in CPL 30.30 (1) (d).
Based on the Penal Law’s definitions, the court concludes that a violation of the ordinance at bar is not a "criminal” of *829 fense. It is true, on the one hand, that such a violation is prosecutable in a court with criminal jurisdiction (where the People act as plaintiff and the defendant enters a "plea”); and this action is subject to the provisions of the Penal Law and the CPL, having been enacted pursuant to Village Law § 20-2006 (a village "may enforce obedience to its ordinances * * * by prescribing therefor that each violation of it shall constitute a violation pursuant to the penal law”). But, not everything subject to the Penal Law and CPL is a crime; indeed petty offenses (including some violations) are excluded from the definition of "crime”. Penal Law § 10.00 (6) provides that " 'crime’ means a misdemeanor or felony”; and CPL 1.20 (39) provides that "a violation or a traffic infraction” is a "petty offense”, not a misdemeanor or a felony.[4] (See also, People v Lane, 144 Misc 2d 953, 954 [App Term, 2d Dept] [concluding, on the basis of those definitions, that other petty offenses are not crimes within the meaning of the CPL].)
Since a "crime” is not charged here, the court must determine if section 1420.04 is the kind of noncriminal "violation” that invokes the statutory protection of CPL 30.30 (1) (d). This requires the court to address and determine the meaning of the words "offense” and "violation” as used in the statute. Once again, there is no express definition of those terms in CPL 30.30 itself; and there does not appear to be any reported case law on the definitions of "offense” and "violation” for purposes of a village ordinance such as the one at issue here. However, there are definitions of those terms in Penal Law § 10.00 (1) and (3), which the court finds controlling, for the same reasons discussed above regarding the definition of "crime”.
Subdivision (1) of Penal Law § 10.00 defines an "offense” as "conduct for which a sentence to a term of imprisonment or to a fine is provided * * * by any * * * local * * * ordinance of a political subdivision of this state.” Section 1420.04 of the Muttontown Village General Ordinance clearly proscribes such an offense. It is undeniably an ordinance of such a political subdivision. The penalty for it is a fine, as specified in section 110 of the General Ordinance: "any person who violates * * * any provisions of this General Ordinance shall * * * be punishable by a fine of not more than $250 for each and every of *830 fense.” The court finds that provision (i.e., § 110) controlling, since Penal Law § 80.05 (4) provides that, where the violation at issue is one "defined outside this chapter” (i.e., not in the Penal Law itself), the applicable fine or penalty is the penalty prescribed in the law or ordinance which defines the violation. (Cf., People v Wayman, 82 Misc 2d 959, 962-963.) Thus, the first requirement of CPL 30.30 (1) (d), i.e., that the defendant be charged with an "offense”, is met. That does not end the inquiry, however, because CPL 30.30 (1) (d) further requires that at least one of the offenses charged must be a noncriminal "violation”.
Subdivision (3) of Penal Law § 10.00 defines "violation” as "an offense, other than a 'traffic infraction’, for which a sentence to a term of imprisonment in excess of fifteen days cannot be imposed.” Plainly, this definition refers only to possible imprisonment, not fines; but, to be sure, its language is not a model of clarity. Was the reference to no more than 15 days’ imprisonment meant to be only an outer limit, subsuming all lesser possible penalties, including fines? Or was the omission of a fine meant to distinguish a "violation” from an "offense”? Does the fact that the only express exclusion from the statutory definition is for "traffic infractions” indicate whether the statute reaches offenses punishable only by fines? There does not appear to be any legislative history or reported case law providing the answer to these questions.
Applying the aforesaid rules of statutory construction, the court concludes that Penal Law § 10.00 (3)’s reference to only imprisonment and its omission of conduct punishable by a fine were purposeful, in light of the inclusion of both imprisonment and fines in the definition of "offense” contained in the same statutory section. The court must assume that the Legislature knew what it was doing when it chose to include or delete particular words. This is particularly so where the Legislature used different words in the same statute, and a fortiori in the same definitional section of the same statute. (Gustafson v Alloyd, Co., 513 US, at —, 115 S Ct, at 1069, supra; Anglin v Anglin, 80 NY2d, at 558, supra.) Indeed, the two subdivisions here (i.e., Penal Law § 10.00 [1], [3]) in effect cross-reference to each other (i.e., "violation” refers to "offense”). The language of CPL 30.30 (1) (d) further supports this conclusion, since it refers to offenses, at least one of which is a violation. Section 30.30 (1) (d) is consistent with the conclusion that "violation” is a genus of the species "offense”, and thus intentionally narrower in scope than an "offense”. If that is so, the Legislature’s omis *831 sion of conduct punishable by only a fine and reference only to imprisonment in the definition of "violation” leads to the logical conclusion that the distinction between the definitions of "offense” and "violation” was a purposeful limitation of "violations” to only those offenses punishable by imprisonment. In sum, since section 1420.04 is not punishable by imprisonment, it is not a "violation” within the provisions of CPL 30.30 (1) (d), and the Speedy Trial Act does not apply to violations of the village ordinance. Accordingly, defendant’s motion to dismiss the case for failure to comply with the Speedy Trial Act is denied. In view of that holding, the court is now constrained to determine whether the village ordinance is unduly vague, so as to be unconstitutional and thus invalid and unenforceable as written.
Turning to the constitutionality issue, the starting point is that every legislative pronouncement has a strong presumption of constitutionality. (Borden’s Co. v Baldwin, 293 US 194, 209; Cook v City of Binghamton, 48 NY2d 323, 330; People v McLeod, 150 Misc 2d, at 610, supra.) Indeed, a party attacking the constitutionality of a statute or ordinance has a heavy burden to show that it is indisputably invalid, i.e., unconstitutional "beyond a reasonable doubt”. (People v Pagnotta, 25 NY2d 333, 337; People v Baker, 150 Misc 2d 713, 716.) Particularly in a court of original jurisdiction, such as this, the conclusion must be "inescapable”. (Matter of Van Berkel v Power, 16 NY2d 37, 40; People v Furlong, 129 Misc 2d 938, 940, supra.) Thus, any ambiguities must be resolved in favor of the legislation’s constitutionality. (Roth v United States, 354 US 476; People v Karns, 81 Misc 2d 186, 199.)
That legislation is too vague is one of the principal grounds for holding a statute or ordinance unconstitutional. (Connally v General Constr. Co., 269 US 385, 391 [clarity is "the first essential of due process of law”]; People v Byron, 17 NY2d 64.) In order to avoid being void for vagueness, a statute or ordinance must be sufficiently precise and clear as to what it covers to be deemed "informative on its face”. (People v Firth, 3 NY2d 472, 474; accord, Rabe v State, 405 US 313, 315.) Thus, it must enable citizens of ordinary intelligence to know what it prohibits, so that they can conform their conduct to its dictates, and also enable those enforcing it to know what kind of conduct warrants prosection thereunder. (People v Dietze, 75 NY2d 47, 53; People v Illardo, 48 NY2d 408, 413.) In this fashion, the statute or ordinance will both protect against arbitrary application (Health Ins. Assn. v Harnett, 44 NY2d 302, 309), and enhance *832 the appropriate and due administration of the law (Baggett v Bullitt, 377 US 360, 374; accord, Bakery Salvage Corp. v City of Buffalo, 175 AD2d 608, 609; People v McCarthy, 119 Misc 2d 263, 268). Where those standards are not met, the ordinance must be declared unconstitutionally vague under the void-for-vagueness doctrine, and thus an unenforceable denial of due process. While the court has some latitude and power to construe a statute or ordinance to overcome constitutional infirmities due to its breadth, it cannot rewrite the statute or ordinance; and it can do so only if the language is susceptible of such interpretation without continuing to be unacceptably vague. (Aptheker v Secretary of State, 378 US 500, 515-516; Matter of Wood v Irving, 85 NY2d 238, 245; People v Dietze, 75 NY2d, at 53, supra.)
In the area of public nuisance legislation, these requirements of due process mean that the statute or ordinance must be sufficiently clear and definitive on its face to assure, at a minimum, that "no inadvertently disturbing act may be punished”. (People v Bakolas, 59 NY2d 51, 54; see also, People v Todaro, 26 NY2d 325, 329.) But it also means much more. The statute or ordinance must also provide for and be susceptible of objective interpretation and understanding, to assure that it may not be applied in an arbitrary or discriminatory manner. (People v New York Trap Rock Corp., 57 NY2d 371, 378-379; see also, People v Cruz, 48 NY2d 419, 428, appeal dismissed 446 US 901 [to be "objective”, statutory words must have "an accepted meaning”]; People v Byron, 17 NY2d 64, supra [susceptible of "common knowledge”].)
To be sure, pronouncing such standards is far easier than drafting statutory language that satisfies them, as draftsmen who have only the best of intentions have often found. The potential problem in meeting such a test was identified in Miller v Valley Forge Vil. (43 NY2d 626), where the Court of Appeals upheld an ordinance allowing for the adoption of park rules regarding the permissible display of "for sale” signs and the use of air conditioners in mobile home parks. A majority of the Court found the statute to be reasonable and clear on its face. However, Judge Cooke dissented, since he found one of the rules "arbitrary and unreasonable”, and subject to "the malice or animosity of a cantankerous neighbor” (43 NY2d, at 632). The concerns expressed in Judge Cooke’s dissent became a benchmark for later cases.
The cases since then, particularly those dealing with noise and nuisance ordinances, provide sufficient guidance and a *833 workable standard to enable application of and adherence to the constitutional test here. For example, courts in New York and other States have found prohibitions against "unreasonable noise” to be sufficiently objective to pass constitutional muster. (See, e.g., People v Bakolas, 59 NY2d, at 53, supra; People v Brown, 137 Misc 2d 172, 175; accord, People v Fitzgerald, 194 Colo 415, 573 P2d 100; Commonwealth v Mastrangelo, 489 Pa 254, 414 A2d 54, appeal dismissed 449 US 894; State v Marker, 21 Ore App 671, 536 P2d 1273; State v Anonymous, 6 Conn Cir 667, 298 A2d 52; see also, State v Johnson, 112 Ariz 383, 542 P2d 808; Hess v State, 260 Ind 427, 297 NE2d 413, revd on other grounds 414 US 105; United Pentecostal Church v Steendam, 51 Mich App 323, 214 NW2d 866; State v Dorsett, 3 NC App 331, 164 SE2d 607.) Thus, in Bakolas (59 NY 2d 51), the Court of Appeals upheld the constitutionality of Penal Law § 240.20 (2), which includes within the crime of "disorderly conduct” the making of "unreasonable noise” if made "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof’. The Court held that that language prescribes an "objective standard of public disturbance” which "describes a noise of a type or volume that a reasonable person” would find intolerable (59 NY2d, at 53) was not "capable of ad hoc and discriminatory enforcement” (supra, at 54). Similarly, in People v King (148 Misc 2d 859, 861), the court upheld section 240.21 of the Penal Law, which prohibits a "disturbance” of a religious service on the ground that such a prohibition is susceptible of objective determination, by reference to what a reasonable person would consider disturbing under the circumstances. (Accord, People v Beecher, 153 Misc 2d 247, 251 ["statutes cannot be drafted with exact precision but may nevertheless use terms which the public would recognize as conduct to be avoided”].)[5]
By contrast, addressing the concern expressed by Judge Cooke in Miller (supra), the Court of Appeals in New York Trap Rock Corp. (57 NY2d 371, supra) declared unconstitutional a noise ordinance of the Town of Poughkeepsie, which had mandated that "unnecessary noise” not be "created within 300 feet of a boundary line of a residential district” (at 376). *834 The ordinance had defined "unnecessary noise” as "any excessive or unusually loud sound or any sound which * * * annoys * * * a person” (at 375). In finding the ordinance unconstitutionally vague, the Court concluded that its wording was too "imprecise” and "abstract” to enable "a future defendant to know” whether he was violating the statute (at 381). The Court emphasized that, although the ordinance attempted to prescribe specific "standards” for determining whether there would be a violation, they were not all-inclusive and a determination would ultimately be based upon the "subjective” opinion of any person who might find the noise offensive.
Likewise, in People v One Adams Blvd. Realty Corp. (NYLJ, Oct. 19, 1994, at 26, col 5, supra), the court invalidated an ordinance of the Town of Babylon outlawing noxious or offensive odors, since it was "lacking in specificity as to what is prohibited”, and "would permit prosecution based solely on the subjective reactions of residents and law enforcement personnel”. As the court correctly pointed out, "for an ordinance to be valid, it must give nothing less than adequate warning of what the law requires the citizen to do, or refrain from doing” (supra; accord, People v Illardo, 48 NY2d, at 414, supra; Bakery Salvage Corp. v City of Buffalo, 175 AD2d, at 610, supra [local "offensive or noxious odors” ordinance unconstitutional, since " 'unless by its terms a law is clear and positive, it leaves virtually unfettered discretion in the hands of law enforcement officials and thereby may encourage arbitrary and discriminatory administration’ ”]).[6]
Elsewhere, statutes and ordinances with similarly subjective tests have been ovérridden as constitutionally vague. (Heard v Rizzo, 281 F Supp 720, 741, affd 392 US 646; Marks v City of Anchorage, 500 P2d 644 [Alaska]; Matter of Brown, 9 Cal 3d 612, 510 P2d 1017; City of Columbus v Becher, 173 Ohio St 197, 180 NE2d 836; Gardner v Ceci, 312 F Supp 516; Pritikin v Thurman, 311 F Supp 1400.)[7]
*835 Thus, a public nuisance-type ordinance which prescribes an objective "reasonable person” test and which is sufficiently "informative on its face” to afford citizens the ability to determine, beforehand, whether particular conduct will fall within its purview is constitutional. On the other hand, an ordinance which makes its reach subject to the whim of a particular citizen or citizens, leaving the ultimate determination to their personal and individual perceptions, is unconstitutionally vague.
The ordinance at bar suffers from the defects characteristic of the latter type of ordinance. Under it, a person could be prosecuted for violation of the ordinance based upon the subjective feelings of any person in the vicinity or even someone merely passing by temporarily. That does not prescribe an objective standard; indeed, it does not even prescribe a standard of conduct common to the community. It is not possible to know beforehand what is and is not legal, so that a person cannot readily conform his or her conduct to assure against violation of the ordinance. Thus, the ordinance has the potential for discriminatory or arbitrary application; and it could readily become the vehicle for unfair or draconian prosecutions. While that may not be true here (the court expresses no view as to the merits of the instant case), the demands of due process transcend the fact situation before the court when an ordinance’s constitutionality is challenged. Otherwise, instead of assuring beforehand against unfair and invalid prosecutions, the courts will be thrust into an ex post facto morass of sorting out which prosecutions are the result of subjective and unwarranted complaints. If the ordinance is to be applied according to its terms, the courts will be powerless to prevent convictions based on such complaints. The public, including all of its citizens, is entitled to know beforehand which conduct will be subject to prosecution. An ordinance outlawing "unreasonable noise” is not a model of foresight and predictability; however, it requires an objective showing and avoids the threat of being susceptible of application based upon the view of not only a single person. By contrast, the ordinance at bar permits not only a conviction on the basis of the subjective views not only of a single person, but also any person who may be "in the vicinity”, which could include anyone passing by, different persons and persons there at different times. Under such a *836 test, no one can ever be sure that, at any given time, he or she is not violating the ordinance or subject to prosecution under it. That is impermissible, and fails to assure due process under the law. Accordingly, section 1420.04 of the General Ordinance of the Village of Muttontown is unconstitutionally vague, and as such, is invalid and unenforceable. In light of this holding, defendant’s motion to dismiss this action is granted.

. Although the complainant is not a resident of Muttontown and admittedly did not suffer a disturbance within the Village of Muttontown, the People contend that the ordinance covers a disturbance to him outside of the Village, since the alleged disturbance emanated from and constituted an offense within the Village. Defendant has not challenged the jurisdictional reach of the ordinance, so that that potential issue is not presently before the court.

. There is a corollary common-law rule requiring speedy trials based upon such constitutional considerations. (See, e.g., Dickey v Florida, 398 US 30; People ex rel. Franklin v Warden, 31 NY2d 498, 502; Matter of Dora P., 68 AD2d 719.) However, defendant does not assert that that rule has been transgressed here.

. The statute is not intended to infringe upon the defendant’s constitutional right to an adequate opportunity to prepare or present his or her defense. (People v Molletle, 87 Misc 2d 236.) Likewise, the statutory protection does not bar the defendant from moving to dismiss or for other preliminary relief after or merely because the People have declared themselves ready for trial. (People v Anderson, 66 NY2d 529.) The defendant can waive the statutory protection by consenting to an adjournment of the trial; but such consent must be clearly and unequivocally expressed. (People v Liotta, 79 NY2d 841.) Such a waiver must occur before the statutory period has run, *827 failing which it will be deemed ineffectual. (People v Battaglia, 187 AD2d 808, 810.)

. That, incidentally, also appears to comport with the historical definition of "crime”, going back to Blackstone who considered crimes to be offenses "of a deeper and more atrocious dye” than petty offenses. (Black’s Law Dictionary 445 [4th ed].)

. As noted above, courts in other States have also concluded that a prohibition against "unreasonable noise” meets this test. (See, e.g., Commonwealth v Mastrangelo, 489 Pa 254, 261, 414 A2d 54, 58, supra ["a man of common intelligence would understand what is and is not” prohibited by such an objectively worded statute]; People v Fitzgerald, 194 Colo 415, 418, 573 P2d 100, 102 [same].)

. The draftsmen of the ordinance in Bakery Salvage attempted to decree an objective standard, defining "noxious or offensive” odors as those which "give the first sensation of fetid or noisome odor to a person of average odor sensitivity” (supra, at 609). Nevertheless, the Court found it too "imprecise”, since it permitted prosecution due to "the presence of any order which annoys any person who owns property in the 'impact area’ ”.

. For example, in City of Columbus (173 Ohio St, at 200, 180 NE2d, at 838, supra), the Supreme Court of Ohio declared unconstitutional a noise ordinance which prohibited the making of "audible sounds to the annoyance of the inhabitants of this city.” The court found that the ordinance failed ,to *835 specify or warn citizens "what degree of noise” would lead to such "annoyance”, and had the risk of predicating a violation upon the subjective views of "a few sensitive people”.